UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREDERICK BARTON DANNER,
Individually and On Behalf of All Others
Similarly Situated,

                    Plaintiff,

          v.

CAESARS ENTERTAINMENT
CORPORATION and CAESARS
ENTERTAINMENT OPERATING
COMPANY, INC.,

                    Defendants.

Case 1:14-cv-07973-SAS


## PLAINTIFF FREDERICK BARTON DANNER'S
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


**GARDY & NOTIS, LLP**

Mark C. Gardy
James S. Notis
Meagan Farmer
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel: 212-905-0509
Fax: 212-905-0508

**GRANT & EISENHOFER P.A.**

Jay W. Eisenhofer
Gordon Z. Novod
Elizabeth Shofner
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel: 646-722-8500
Fax: 646-722-8501

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

OVERVIEW OF RELEVANT FACTS AND OF PROVISIONS OF THE  2016 NOTES INDENTURE AND THE TRUST INDENTURE ACT ................................................. 4

ARGUMENT ....................................................................................................... 7

    I.       DEFENDANTS HAVE VIOLATED SECTION 508 OF THE 2016 NOTES INDENTURE AND SECTION 316(B) OF THE TRUST INDENTURE ACT; THUS, PLAINTIFF IS ENTITLED TO BRING THIS ACTION TO ENFORCE HIS RIGHTS ................................................. 8

           A.      Defendants Failed To Obtain The Consent Of Each And Every 2016 Noteholder, As Required By The Trust Indenture Act And By  Section 508 Of The 2016 Notes Indenture ......................................... 8

    II.     SINCE THE AMENDMENTS REQUIRED 100% CONSENT, PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE "NO-ACTION CLAUSE" SET FORTH IN SECTION 507 OF THE 2016 NOTES INDENTURE .................................................................................. 13

           A.      Since The Amendments Impaired Plaintiff's Unconditional Right To Receive Principal And Interest, The No-Action Clause Does Not Apply To Plaintiff's Claims ............................................................ 13

           B.      Plaintiff Is Excused From Compliance With The No-Action Clause Because A Demand On The Indenture Trustee, Who Had Already Agreed To The Supplemental Indentures At The Time Plaintiff Commenced The Action, Would Be Futile ............................................. 17

    III.    DEFENDANTS BREACHED THE 2016 NOTES INDENTURE BY ENTERING INTO THE AGREEMENT AND THE 2016 NOTES SUPPLEMENTAL INDENTURE ................................................................. 18

           A.      Since The Release Of The Guarantee Effected A Non-Consensual Change To Plaintiff's Payment Rights And Affects Plaintiff's Practical Ability To Recovery Payment, Defendants Were Required To Seek Plaintiff's Consent To The Agreement And The Amendments ....................................................................................... 18

           B.      The 2016 Notes Indenture Expressly Required Defendants To Redeem The Preferred Noteholders' 2016 Notes In A Fair And Appropriate Manner, Which Did Not Occur When Defendants Purchased The Preferred Noteholders' Notes At Par Plus Accrued Interest ................................................................................................. 19

i

C.      The Complaint Adequately Pleaded Damages Resulting From
        Defendants' Breaches Of The 2016 Notes Indenture .............................. 22

IV.     DEFENDANTS BREACHED THE IMPLIED COVENENANT OF
        GOOD FAITH AND FAIR DEALING BY ENTERING INTO THE 2016
        NOTES SUPPLEMENTAL INDENTURE ........................................................ 24

CONCLUSION ...................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                        <u>Page(s)</u>

*Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*,
  No. 09 CV 01796, 2012 WL 3890128 (S.D.N.Y. Sept. 7, 2012) .................................... 22

*Argonaut P'ship, LP v. Bankers Tr. Co. Ltd.*,
  No. 96 CIV. 1970, 96 CIV. 2222, 1997 WL 45521 (S.D.N.Y. Feb. 4, 1997) ................. 22

*Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*,
  No. 10 Civ. 2329, 2010 WL 4449366 (S.D.N.Y Oct. 13, 2010) .................................... 23

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*,
  692 F.3d 42 (2d Cir. 2012) ................................................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ...................................................................................................... 7, 8

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
  85 F.3d 970 (2d Cir. 1996) .............................................................................................. 8

*Borg v. N.Y. Majestic Corp.*,
  139 N.Y.S.2d 72 (N.Y. Sup. Ct. 1954) .......................................................................... 17

*Brady v. UBS Fin. Servs, Inc.*,
  538 F.3d 1319 (10th Cir. 2008) ..................................................................................... 10

*Chase Manhattan Bank, N.A. v. Keystone Distribs.*,
  873 F. Supp. 808 (S.D.N.Y. 1994) .......................................................................... 24, 25

*City of N.Y. v. Smoke-Spirits.com*,
  541 F.3d 425 (2d Cir. 2008) ............................................................................................ 7

*Concord Real Estate CDO 2006-1 v. Bank of Am. N.A.*,
  996 A.2d 324 (Del. Ch. 2010) .................................................................................. 21, 22

*Cont'l Cas. Co. v. State of N.Y. Mortg. Agency*,
  No. 94 Civ. 8408, 1998 WL 513054 (S.D.N.Y. Aug. 18, 1998) .............................. 14, 15

*Cruden v. Bank of N.Y.*,
  957 F.2d 961 (2d Cir. 1992) ................................................................................. 16, 17, 23

*Dalton v. Educ. Testing Serv.*,
  87 N.Y.2d 384 (1995) ..................................................................................................... 24

*Dayan Enters., Corp. v. Nautica Apparel, Inc.*,
  No. 03 Civ. 5706, 2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003) ................................. 25

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011) ............................................................................... 18

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) .............................................................. 18

*Emmet & Co., Inc. v. Catholic Health East*,
    37 Misc. 3d 854 (N.Y. Sup. Ct. 2012) ............................................................ 16

*Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*,
    No. 99 CIV 10517, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999) .............................. passim

*Feldbaum v. McCrory Corp.*,
    Nos. 11866, 11920, 12006, 1992 WL 119095 (Del. Ch. June 2, 1992) .................... 17, 18

*Greylock Global Opportunity Master Fund Ltd. v. Province of Mendoza*,
    No. 04 Civ.7643, 2004 WL 2290900 (S.D.N.Y. Oct. 12, 2004) ....................... 10

*Greylock Global Opportunity Master Fund Ltd. v. Province of Mendoza*,
    No. 04 Civ.7643, 2005 WL 289723 (S.D.N.Y. Feb. 8, 2005) .......................... 10

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
    18 N.Y.3d 765 (2012) ...................................................................................... 23

*Heine v. Signal Cos., Inc.*,
    No. 74 Civ. 30361977, 1977 WL 930 (S.D.N.Y. Mar. 4, 1977) ................................ 20, 21

*House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
    No. 13 Civ. 519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ............................... 16, 17

*In re Bd. of Dirs. of Multicanal S.A.*,
    307 B.R. 384 (Bankr. S.D.N.Y. 2004) ............................................................. 12

*In re Cendant Corp. Sec. Litig.*,
    Nos. 98-CV-1664, 98-CV-0381, 98-CV-0759,
    2005 WL 3500037 (D.N.J. Dec. 21, 2005) ................................................. 14, 15

*In re Cendant Corp. Sec. Litig.*,
    Nos. 98-CV-1664, 98-CV-0381, 98-CV-0759
    2006 WL 1722588 (D.N.J. June 20, 2006) ................................................. 14

*Kassner v. 2nd Ave. Deli., Inc.*,
    496 F.3d 229 (2d Cir. 2007) ............................................................................ 7

*Kelley v. Prudence Co.*,
    144 Misc. 651 (N.Y. Sup. Ct. 1932) ............................................................... 17

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
    925 F.2d 556 (2d Cir. 1990).................................................................. 23

*Kirke La Shelle Co. v. Armstrong Co.*,
    263 N.Y. 79 (1933) .......................................................................... 24

*Landmark Ventures, Inc. v. Wave Sys. Corp.*,
    2013 WL 909184 (2d Cir. Mar. 12, 2013)...................................... 18

*Magten Asset Mgmt. Corp. v. Nw. Corp.*,
    313 B.R. 595 (Bankr. D. Del. 2004) ......................................... 10, 11

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
    859 F. Supp. 743 (S.D.N.Y. 1994) ........................................... 10, 16

*Medinol Ltd. v. Boston Scientific Corp.*,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004)............................................. 22

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Xerox Corp.*,
    25 A.D. 3d 309 (1st Dep't 2006) ................................................. 24

*Oklahoma Police Pension and Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
    291 F.R.D. 47 (S.D.N.Y. 2013) ................................................... 22

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    23 N.Y.3d 549 (N.Y. 2014) ...................................................... 13, 16

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*,
    914 F. Supp. 2d 422 (S.D.N.Y. 2012)............................................. 11

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010)............................................................ 8

*Triton Partners LLC v. Prudential Secs. Inc.*,
    301 A.D.2d 411 (1st Dep't 2003) ................................................. 24

*Unitrin, Inc. v. Am. Gen. Corp.*,
    651 A.2d 1361 (Del. 1995) ........................................................... 20

*UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*,
    793 F. Supp. 448 (S.D.N.Y. 1992) ............................................... 12

*Wertheim Schroeder & Co. v. Avon Prods., Inc.*,
    No. 91 Civ. 2287, 1993 WL 126427 (S.D.N.Y. Apr. 1, 1993)......................... 25

*YRC Worldwide Inc. v. Deutsche Bank Trust Co. Ams.*,
    No. 10–2106–JWL, 2010 WL 2680336 (D. Kan. July 1, 2010)................................ 11, 12

v

## STATUTES AND RULES

15 U.S.C. § 77ppp(b) .................................................................................................... 5, 8

17 C.F.R. § 210.1-02(aa) .................................................................................................. 6

17 C.F.R. § 240.14d ......................................................................................................... 9

28 U.S.C. § 1331 ............................................................................................................. 13

Fed. R. Civ. P. 8 ............................................................................................................... 7

Plaintiff Frederick Barton Danner, individually and on behalf of all others similarly situated, submits this Memorandum in opposition to Defendants Caesars Entertainment Corporation ("CEC") and Caesars Entertainment Operating Company, Inc.'s ("CEOC," and with CEC, "Caesars" or "Defendants") November 12, 2014, motion to dismiss this action and their brief in support thereof (the "Motion").[1]

## PRELIMINARY STATEMENT

The Motion is predicated on a single gating issue: whether the transaction in question, by eliminating Defendant CEC's guarantee of unsecured bonds issued by CEOC, caused a breach of the applicable bond indenture in violation of the Trust Indenture Act of 1939. This transaction, if sustained, will materially affect Plaintiff's ability to recover principal and interest owed on his 2016 Notes. The August 2014 transaction removed the guarantee given by the asset-rich parent company, CEC, leaving Plaintiff and other bondholders with a worthless right to collect principal and interest from the issuer, CEOC, a company with approximately $17 billion of senior secured debt. This transaction was accomplished by brazenly enticing certain privileged noteholders, who were paid handsomely for their votes, to impair the remaining bondholders of their right to principal and interest, in contravention of the TIA's 100% bondholder consent requirement.

In altering Plaintiff's absolute and unconditional right to receive payment of principal and interest on the 2016 Notes and to institute suit for the enforcement of any such payment, Caesars violated Section 316(b) of the TIA and Section 508 of the 2016 Notes Indenture. There is little doubt that CEOC will undergo a financial restructuring in the near future, leaving the holders of

---

[1]   The Motion will be cited as "Mot." Unless otherwise defined herein, capitalized terms have the meaning accorded them in Plaintiff's Complaint. Plaintiff's Complaint in this action is denominated "Compl." The complaint filed by MeehanCombs Global Credit Opportunities Master Fund, LP; Relative Value-Long/Short Debt Portfolio, A Series of Underlying Funds

2016 Notes without any meaningful recovery. Any statements by the Defendants to the contrary are not only disingenuous, but badly mischaracterize CEOC's precarious financial condition.

It is clear that CEOC will be unable to repay the 2016 Notes upon maturity. This transaction was consummated as CEOC heads towards a bankruptcy filing. On November 19, 2014, CEOC disclosed a now-outdated restructuring proposal (which was superseded by newer proposals), developed in connection with its negotiations with certain first lien creditors. *See* CEOC, Form 8-K, Ex. 99.1, filed Nov. 19, 2014. That proposal would have resulted in a 100% recovery for the senior secured credit facility lenders, a 93.8% recovery for first lien noteholders and "a de minimis amount of equity" for holders of $5.26 billion of second lien bond debt and the more than $500 million of unsecured bond debt, including Plaintiff. *Id*. This followed earlier statements from CEOC, such as the following:

> *We do not currently expect that our cash flows from operations will be sufficient to repay our indebtedness and we will need to pursue additional debt or equity offerings or seek a refinancing, amendment, private restructuring or a reorganization under Chapter 11 of the Bankruptcy Code*. . . . [W]e estimate, that absent a refinancing, amendment, private restructuring or a reorganization under Chapter 11 of the Bankruptcy Code, based on our current operating forecasts and their underlying assumptions, *we will require additional sources of liquidity to fund our operations and obligations beginning during the fourth quarter of 2015*. These factors raise substantial doubt as to our ability to continue as a going concern beyond the fourth quarter of 2015 . . . .

CEOC, Quarterly Report on Form 10-Q, filed Nov. 14, 2014, at 10 (emphasis added). These statements were not new, as CEC had previously stated "[w]e do not expect that cash flow from operations will be sufficient to repay CEOC's indebtedness in the long-term and we will have to ultimately seek a restructuring, amendment or refinancing of our debt, or if necessary, pursue additional debt or equity offerings." CEC, Annual Report on Form 10-K filed Mar. 17, 2014, at

---

Trust; SB 4 CP, LLC; CFIP Ultra Master Fund, Ltd.; and Trilogy Portfolio Company, LLC (collectively, the "MeehanCombs Complaint").

46. The Transaction, which altered Plaintiff's fundamental investment without his consent, is of a piece with these facts.

Defendants attempt to obfuscate the Court's attention to this context by noting that CEOC has not yet missed an interest payment on the 2016 Notes. But, a missed payment under the 2016 Notes is not a prerequisite to a claim under Section 316(b) of the TIA or the 2016 Notes Indenture where, as here, Caesars's "elimination of the guarantors and the simultaneous disposition of all meaningful assets [of CEOC] will effectively eliminate [P]laintiffs' ability to recover [principal and interest] and will remove ... [the] 'safety net' of a guarantor...." *Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*, No. 99 CIV 10517, 1999 WL 993648, at *7 (S.D.N.Y. Nov. 2, 1999) (Baer, J.).

Similarly, Defendant's reliance on a "no-action clause" in the 2016 Notes Indenture to bar Plaintiff's claims ignores the plain consequences of the Transaction – that Plaintiff is stripped of a valuable guarantee by virtue of the consent of a subset of privileged bondholders and left with a right to assert a payment default against an insolvent issuer, CEOC. This transaction required 100% consent from bondholders under the TIA and the 2016 Notes Indenture, and Plaintiff's claims are not subject to the no-action clause. Likewise, Defendants' arguments that Plaintiff's complaint fails to state a claim for breach of contract assumes the self-serving legal conclusion that the Guarantee stripping transaction did not require the unanimous consent of the 2016 Noteholders.

Lastly, Plaintiff was deprived of the benefit of his bargain. Defendants failed to fulfill their contractual obligations to all 2016 Noteholders, selecting to engage in a transaction designed to satisfy a few select noteholders and to assist it to achieve its larger restructuring. Adjudication of the Complaint is entirely appropriate and should survive a motion to dismiss.

3

## OVERVIEW OF RELEVANT FACTS AND OF PROVISIONS OF THE 2016 NOTES INDENTURE AND THE TRUST INDENTURE ACT

On August 12, 2014, Defendants announced a transaction intended to release CEC from its guarantee obligation on the 2016 Notes as well as the 2017 Notes.[2] Compl. ¶¶ 2-3. Under this transaction, Caesars agreed to pay certain Preferred Noteholders (holding at least 51% of the 2016 Notes) a par recovery – 100 cents on the dollar – plus accrued and unpaid interest, in return for 2016 Notes with a principal amount of $89.4 million.[3] *Id.* ¶¶ 2-3, 5. As part of the transaction, the Preferred Noteholders agreed to vote their 2016 Notes to amend the 2016 Notes Indenture to, *inter alia,* strip CEC's Guarantee. *Id.* ¶ 4. The modifications to the 2016 Notes Indenture were made without the consent of Plaintiff and the other Non-Preferred 2016 Noteholders collectively holding approximately $119 million of 2016 Notes. *Id.* ¶¶ 4-5.

As a result of this sweetheart deal with the Preferred Noteholders, the remaining 2016 Noteholders were left holding unsecured bonds issued by CEOC (Compl. ¶ 6), an entity that has acknowledged it will not be able to meet its long-term debt obligations beyond 2015 without a restructuring and has exchanged restructuring proposals with certain secured creditors that would provide a *de minimis* recovery to 2016 Noteholders. CEC, Annual Report on Form 10-K, at 46 (Mar. 17, 2014); CEOC, Quarterly Report on Form 10-Q, at 10 (Nov. 14, 2014); CEOC, Current Report on Form 8-K, Ex. 99.1 (Nov. 19, 2014). Moreover, it has been alleged by the indenture trustees for certain of CEOC's first and second lien bonds that CEOC is insolvent and certain

---

[2]  Although the 2017 Notes were also subject to the transaction discussed herein and in the MeehanCombs Complaint, they are not subject to this action.

[3]  The Preferred Noteholders held an additional $41 million in 2016 Notes that were not purchased by Caesars under the transaction. This marked the second time since May 2014 that Caesars tried to rid CEC of guarantee obligations for indebtedness of CEOC. On May 5, 2014, CEC sold five percent of its ownership interest in CEOC and upon completion of that transaction, announced that CEC ceased to guarantee CEOC's outstanding secured and unsecured notes. CEC, Current Report on Form 8-K (May 6, 2014).

transactions dating back to 2010 are fraudulent transfers. In light of these facts, the 2016 Notes are virtually worthless. Compl. ¶¶ 6, 7. There is no practical prospect of a recovery without the CEC Guarantee, and Plaintiff's rights under the 2016 Notes Indenture and the Trust Indenture Act have been impaired. *Id.* ¶¶ 6, 7, 33.

The 2016 Notes Indenture is clear that all beneficial holders have the right to receive principal and interest. Section 508 of the 2016 Notes Indenture provides:

> *Notwithstanding any other provision in this Indenture*, *the Holder of any Security shall* have *the right, which is absolute and unconditional, to receive payment of the principal of* . . . and . . . *interest on such Security* on the respective Stated Maturities expressed in such Security . . . *and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder*.

2016 Notes Indenture, § 508 (emphasis added); Compl. ¶ 21. Section 508 of the 2016 Notes Indenture is mandated by section 316(b) of the TIA. *See* 2016 Notes Indenture, at i. Section 316(b) provides in pertinent part

> *Notwithstanding any other provision of the indenture to be qualified*, *the right of any holder* of any indenture security *to receive payment of the principal of and interest on such indenture security*, on or after the respective due dates expressed in such indenture security, *or to institute suit for the enforcement of any such payment* on or after such respective dates, *shall not be impaired or affected without the consent of such holder* . . . .

15 U.S.C. § 77ppp(b) (emphasis added).

Section 1501(1) of the 2016 Notes Indenture states that the Guarantee is made by CEC "*irrevocably and unconditionally . . . to each Holder* of a Security . . . ." 2016 Notes Indenture, § 1501(1) (emphasis added). Additionally, the 2016 Notes Indenture provides that "Guarantor *hereby agrees that its obligations hereunder shall be unconditional, irrespective of . . . any waiver or consent by any Holder of such Securities with respect to any provisions hereof* . . . ." 2016 Notes Indenture, § 1501(1) (emphasis added); Compl. ¶ 24.

There are only a few specific circumstances under which Caesars may terminate the Guarantee. For example, Section 1503(3) provides that the Guarantee may be released only upon certain events, including if CEOC "ceases for any reason to be a "wholly owned subsidiary" of the Guarantor (as such term is defined in Rule 1-02(z) of the Regulation S-X promulgated by the SEC)." 2016 Notes Indenture, § 1503(3).[4]

Defendants' take on the significance of this provision (and on the factual recitation in Plaintiff's complaint) is puzzling. Defendants claim that "CEC's guarantee was terminated in May 2014, when CEC sold a 5% stake in CEOC to a third party, and CEOC was thus no longer a wholly owned subsidiary." Mot. at 6. Yet, Caesars then paid $89.6 million to the Preferred Noteholders in order to accomplish that very same thing.

Like all indentures, certain provisions of the 2016 Notes Indenture may be amended under certain circumstances, with different degrees of bondholder consent. *See generally* 2016 Notes Indenture, § 902. Some changes require "***the written consent of the Holders of at least a majority in principal amount of the Outstanding Securities of each series affected by such supplemental indenture***." while other more significant changes require 100% consent. 2016 Notes Indenture, § 902 (emphasis added). The 2016 Notes Indenture requires unanimous consent to "***modify any of the provisions of . . . Section[] 508***." 2016 Notes Indenture, § 902(4) (emphasis added).

The 2016 Notes Indenture also requires, in the case of the redemption of less than all 2016 Notes, that the indenture trustee treat all noteholders fairly and appropriately. 2016 Notes Indenture, § 1103; Compl. ¶ 31. Section 905 of the 2016 Notes Indenture requires that every

---

[4]   Rule 1-02(aa) (formerly Rule 1-02(z)) of the Regulation S-X defines "wholly owned subsidiary" as "a subsidiary substantially all of whose outstanding voting shares are owned by its parent and/or the parents other wholly owned subsidiaries." 17 C.F.R. 210.1-02(aa).

supplemental indenture comply with the TIA. 2016 Notes Indenture, § 905 ("Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect"); *Id*. ¶ 32.

Although the Amendments do not formally strip Plaintiff and the other Class Members of their right to sue CEOC for non-payment of principal and interest on the 2016 Notes, they purposefully render that right worthless. Compl. ¶¶ 6-7, 33, 50, 59. As a practical matter, Plaintiff will not be able to seek recourse from CEOC, which today is highly leveraged and insolvent, or CEC, the now discharged guarantor. *Id*. ¶ 33. Thus, the elimination of the Guarantee constitutes an impairment of Plaintiff's right to receive payment and interest on the 2016 Notes in violation of Sections 508, 902 and 905 of the 2016 Notes Indenture, as well as Section 316(b) of the TIA. *Id*. ¶¶ 33, 50.

## <u>ARGUMENT</u>

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *Kassner v. 2nd Ave. Deli., Inc*., 496 F.3d 229, 237 (2d Cir. 2007). A complaint must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* A plaintiff need only plead a "short and plain statement of the claim," (Fed. R. Civ. P. 8), so long as the facts alleged and any reasonable inferences that can be drawn in a plaintiff's favor, give rise to a plausible claim for relief. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012); *City of N.Y. v. Smoke-Spirits.com*, 541 F.3d 425, 455 (2d Cir. 2008). The plausibility requirement does not impose a

"probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the conduct alleged. *See Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 322 (2d Cir. 2010) (citing *Twombly*, 555 U.S. at 556).

**I.      DEFENDANTS HAVE VIOLATED SECTION 508 OF THE 2016 NOTES INDENTURE AND SECTION 316(b) OF THE TRUST INDENTURE ACT; THUS, PLAINTIFF IS ENTITLED TO BRING THIS ACTION TO ENFORCE HIS RIGHTS.[5]**

> A.      Defendants Failed To Obtain The Consent Of Each And Every 2016 Noteholder, As Required By The Trust Indenture Act And By Section 508 Of The 2016 Notes Indenture.

Both the Trust Indenture Act and the 2016 Notes Indenture expressly provide that Plaintiff may institute a lawsuit to enforce his absolute and unconditional right to receive payments of principal and interest. Section 508 of the 2016 Notes Indenture protects each and every holder's absolute and unconditional right to receive payment of the "***principal of*** . . . and . . . ***interest on such Security***" and "***and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder***." 2016 Notes Indenture, § 508 (emphasis added). The protection of this absolute right is mandated by Section 316(b) of the TIA. *See* 2016 Notes Indenture, at i; 15 U.S.C. § 77ppp(b).

In a factually analogous case, *Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*, Judge Baer held that the TIA Section 316(b)'s unanimous consent requirement was triggered when the issuer sought to release the solvent guarantor. 1999 WL 993648, at *8. In that case, in an attempt to restructure its debts, the issuer commenced a tender offer to strip a

---

[5]   Because the language of Section 508 of the 2016 Notes Indenture is required by Section 316(b) of the TIA, Plaintiff addresses both statutory claims and contract claims simultaneously. *See Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996) ("The interpretation of the indenture provisions mandated by the [Trust Indenture] Act does not depend on ordinary contract principles—the intent of the parties—but depends on an interpretation of the statute") (quotation omitted).

parent guarantee, along with certain other covenants, as part of a restructuring whereby the issuer was to transfer substantially all of its assets to a new company. Certain non-tendering holders moved for a preliminary injunction, alleging that the transactions violated TIA Section 316(b).

Judge Baer granted the injunction, and held that the "defendant's elimination of the guarantors and the simultaneous disposition of all meaningful assets, defendant will effectively eliminate plaintiffs' ability to recover and will remove a holder's "safety net" of a guarantor, which was obviously an investment consideration from the outset." *Federated*, 1999 WL 993648, at *7 (emphasis added). The court continued, "[t]aken together, ***these proposed amendments could materially impair or affect a holder's right to sue. A holder who chooses to sue for payment at the date of maturity will no longer, as a practical matter, be able to seek recourse*** from either the assetless defendant or from the discharged guarantors." *Id*. (emphasis added). The court concluded that "[i]t is beyond peradventure that when a company takes steps to preclude any recovery by noteholders for payment of principal coupled with the elimination of the guarantors for its debt, that such action does not constitute an "impairment" or "affect" the right to sue for payment." *Id*. Judge Baer found that the plaintiffs had made a sufficient showing that the offer and proposed amendments would constitute an impairment of the right to sue for payment, thus meeting the requirement to establish a likelihood of success on the merits for a preliminary injunction. *Id*.

The facts here are very similar to those in *Federated*. While Caesars did not even attempt a tender offer (and perhaps violated Rule 14(d) of the Securities Exchange Act of 1934 (17 C.F.R. § 240.14d)), the transaction had the clear effect of stripping Plaintiff of a valuable guarantee and leaving him with an empty right to assert a payment default from an insolvent issuer, CEOC.

9

In their argument to limit the precedential value of *Federated* (*see* Mot. at 15 n.2), Defendants fail to mention that Judge Baer twice considered his prior ruling, in 2004 and again in 2005, when considering whether an issuer's move to strip covenants and rescind a prior waiver of sovereign immunity violated TIA Section 316(b). *See Greylock Global Opportunity Master Fund Ltd. v. Province of Mendoza*, No. 04 Civ.7643, 2004 WL 2290900, at *4 (S.D.N.Y. Oct. 12, 2004) (declining to extend a then existing temporary restraining order enjoining an Argentine province from consummating an allegedly unlawful exchange offer relating to bonds it issued); *see also Greylock Global Opportunity Master Fund Ltd. v. Province of Mendoza*, No. 04 Civ.7643, 2005 WL 289723, at *8 (S.D.N.Y. Feb. 8, 2005) (granting defendant's motion for summary judgment and denying plaintiffs' motion for summary judgment). In *Greylock*, Judge Baer distinguished his reasoning in *Federated*, finding that despite the stripping of covenants and the obstacle of sovereign immunity, other remedies remained available to the *Greylock* plaintiff. *Id.* at *6. Thus, the *Greylock* plaintiff could still recover damages by attaching the defendant's assets, unlike the plaintiffs in *Federated* and the case at bar.

Defendants cite *Magten Asset Mgmt. Corp. v. Nw. Corp.*, for the proposition that TIA Section 316(b) " protects only a noteholder's legal right to receive payment when due."[6] Mot. at 14 (citing *Magten Asset Mgmt. Corp. v. Nw. Corp.* (*In re Nw. Corp.*), 313 B.R. 595, 600 (Bankr. D. Del. 2004)). *Nw. Corp.* dealt with a challenge to a transaction whereby issuer's assets were

---

[6] Defendants cited two other cases to support their argument that TIA Section 316(b) provides a right to bring suit only after a payment has come due. However, *McMahan & Co. v. Wherehouse Entm't, Inc.*, 859 F. Supp. 743, 748 (S.D.N.Y. 1994), was primarily concerned with an acceleration clause that holders invoked in seeking to tender their debentures. The court deemed the acceleration provision a collection remedy, rather than a "true" default, and thus concluded that TIA section 316(b) was inapplicable. *Brady v. UBS Fin. Servs, Inc.*, 538 F.3d 1319 (10th Cir. 2008) addressed whether a bondholder was time-barred from suing for payment upon the stated maturity date of the bond in light of an earlier acceleration. Therefore, neither case squarely presented the question at issue before this Court.

transferred to an insolvent corporation that assumed the liabilities under the indenture. *Nw. Corp.*, 313 B.R. 595. The Delaware bankruptcy court reached its holding without addressing *Federated*, and Defendants do not explain why the facts at bar more resemble *Nw. Corp.* rather than *Federated*. Similarly, Defendants rely on *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 914 F. Supp. 2d 422, 432 (S.D.N.Y. 2012) (Pauley III, J.) for the proposition that TIA Section 316(b) "only prevents non-consensual impairments of certificateholders' right to demand payment of interest and principal." Mot. at 14. Again, the Defendants play fast and loose with the facts of this case, as the court merely quoted *Nw. Corp.* in repeating an argument that the plaintiffs in his case failed to respond to, causing Judge Pauley to deem the TIA Section 316(b) claim abandoned. It was hardly as if the TIA Section 316(b) issue was determined by the court after full litigation by the parties.

Lastly, the Defendants claim that *YRC Worldwide Inc. v. Deutsche Bank Trust Co. Ams.*, No. 10–2106–JWL, 2010 WL 2680336 (D. Kan. July 1, 2010) "is on point" and supports their TIA Section 316(b) argument. Mot. at 14. Yet, Defendants give a superficial overview of the facts of *YRC*. In *YRC*, the plaintiff, as part of a restructuring, offered to exchange notes for equity, with the exiting bondholders giving consent to delete from the surviving indenture a put right as well as the successor obligor provision, which prohibited the merger of the issuer and/or disposition of "substantially all" assets of the issuer unless the bond obligations are assumed by the surviving entity. *Id.* at *6. Since there was not unanimous consent (holders of 90% of the notes accepted the offer), the indenture trustee refused to execute the supplemental indenture. *Id.*

The *YRC* court first considered whether the removal of the put right required the consent of all bondholders. *YRC*, 2010 WL 2680336, at *2-6. The Kansas court held, *inter alia*, that TIA Section 316(b) and the accompanying indenture provision protected holders from such

amendments and required unanimous consent. *YRC*, 2010 WL 2680336, at *4-6. The court second considered whether the deletion of the merger and "substantially all" covenants violated TIA Section 316(b) and the 2016 Notes Indenture. Of significance here, the court distinguished the facts before it from the facts of *Federated*, observing that

> the [t]rustee has not shown that, under the amendments approved by a majority of the holders, plaintiff is in fact divesting itself of all of its assets, *thereby threatening the holders' ability to recover payment under the notes from [the YRC] plaintiff. Nor has the [t]rustee shown that holders would no longer have any recourse against the notes' guarantors.* Thus, *there is no basis to conclude* . . . , as the *Federated* court did in its case, *that the amendments necessarily leave the holders with no practical ability to receive payments due under the notes.*

*YRC*, 2010 WL 2680336, at *7 (emphasis added). Only in light of *YRC*'s facts did the court find *Nw. Corp.*'s reasoning more persuasive. *Id*. Moreover, the *YRC* court held that "whatever its affect on the holders' ultimate ability to recover their investment, the deletion of [the merger and "substantially all" covenants] does not affect the holder's legal rights to receive payments from plaintiff or the guarantors or to institute suit to enforce those payment obligations." *Id.*

Here, the 2016 Noteholders' legal right to receive payments from CEC has been eliminated. Caesars's "elimination of the guarantors and the simultaneous disposition of all meaningful assets [of CEOC] will effectively eliminate [P]laintiffs' ability the recover [principal and interest] and will remove . . . [the] 'safety net' of a guarantor . . . ." *Federated,* 1999 WL 993648, at *7. One of the goals of the Trust Indenture Act was to stop collusive activities by and between issuers and groups of bondholders that would govern the rights of minority bondholders. *See In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 388 (Bankr. S.D.N.Y. 2004); *see also UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*, 793 F. Supp. 448, 452-53 (S.D.N.Y. 1992) ("Enactment of Section 316(b) is attributable to the Securities Exchange Commission's concern about the motivation of insiders and quasi-insiders to destroy a bond issue through insider

control...."). The conduct of Caesars under examination here was one such type of collusive activity that Congress intended to stop through the enactment of TIA Section 316(b).

Thus, while TIA Section 316(b) "does not provide a guarantee against the issuing company's default or its ability to meet its obligations…" here, Plaintiff and all 2016 Noteholders are protected from the removal of the Guarantee absent unanimous consent or as expressly provided in Article XV of the 2016 Notes Indenture.[7]

## II.    SINCE THE AMENDMENTS REQUIRED 100% CONSENT, PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE "NO-ACTION CLAUSE" SET FORTH IN SECTION 507 OF THE 2016 NOTES INDENTURE.

### A.    Since The Amendments Impaired Plaintiff's Unconditional Right To Receive Principal And Interest, The No-Action Clause Does Not Apply To Plaintiff's Claims.

Defendants cannot escape liability by relying on a "no-action" clause in the 2016 Notes Indenture that does not apply to Plaintiff's claims. Section 507 of the 2016 Notes Indenture provides for certain procedural safeguards to ensure that claims and causes of action commenced on behalf of bondholders are not duplicative, frivolous, or otherwise economically inefficient as against the issuer at the expense of the majority's interest. *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560 (N.Y. 2014). The no-action clause is not without limits, as discussed above, Section 508 of the 2016 Notes Indenture specifically excepts from the no-action clause suits to enforce the right to receive payment of principal and interest on the 2016 Notes. Section 508 of the 2016 Notes Indenture provides:

> ***Notwithstanding any other provision in this Indenture***, the Holder of any Security shall have the right, which is absolute and unconditional, to receive payment of the principal of and any premium and . . . interest on such Security on the respective Stated Maturities expressed in such Security . . . and to institute suit

---

[7]    Because Plaintiff has adequately alleged causes of action under the TIA that give rise to federal question jurisdiction under 28 U.S.C. § 1331, there is no need to consider whether this Court has supplemental jurisdiction over Plaintiff's common law causes of action.

for the enforcement of any such payment, and such rights shall not be impaired
without the consent of such Holder.

2016 Notes Indenture, § 508 (emphasis added). Both the 2016 Notes Indenture and
Section 316(b) of the TIA permit Plaintiff to institute a lawsuit to enforce his absolute and
unconditional right to receive payment of principal and interest notwithstanding the no-action
clause, and Section 508 if the 2016 Notes Indenture does not limit that exception to suits for
unpaid principal and interest. *See Cont'l Cas. Co. v. State of N.Y. Mortg. Agency*, No. 94 Civ.
8408, 1998 WL 513054, at *4 (S.D.N.Y. Aug. 18, 1998) (action to enforce the payment of
principal and interest did not require compliance with no-action provisions where right to receive
payment exception to no-action clause in indenture contained no express language limiting its
application to suits for unpaid principal and interest); *see also Federated*, 1999 WL 993648, at
*8 n.7. Because the Amendments fundamentally impair Plaintiff's ability to recover principal
and interest owed, Plaintiff may assert claims under both the TIA and the 2016 Notes Indenture.
*See Federated*, 1999 WL 993648, at *7.

Defendants' argument that Plaintiff's claim is not ripe because there has been no default
in payment of principal or interest must be rejected. *See* Mot. at 19. "New York case law is clear
that absent an explicit provision limiting the 'no-action' clause exception to suits for unpaid
principal and interest, the 2016 Notes Indenture is to be interpreted to give effect to the clear
language of the document to determine whether plaintiffs' suits are barred." *In re Cendant Corp.
Sec. Litig.*, Nos. 98-CV-1664, 98-CV-0381, 98-CV-0759, 2006 WL 1722588, at *2 (D.N.J. June
20, 2006) (citation omitted) (applying New York law to indenture provisions finding the right to
receive principal and interest exception to the no-action clause of the indenture applied, giving
plaintiffs standing to sue). In *Cendant Corp. Sec. Litig.*, Nos. 98-CV-1664, 98-CV-0381, 98-CV-
0759, 2005 WL 3500037, at *9 (D.N.J. Dec. 21, 2005), the plaintiff noteholders asserted breach

14

of contract claims against an issuer of bonds, which bonds were governed by an indenture under New York law. *Id.* Like the instant action, the relevant indenture included a no-action clause, as well as a covenant guaranteeing holders an unconditional right to receive principal and interest and to institute suit for enforcement of that right in the following manner:

> Notwithstanding any other provision in this Indenture, the Holder of any security shall have the right, which is absolute and unconditional, to receive payment . . . of the principal of (and premium, if any, on) and . . . interest on, such Security or payment of such coupon on the respective Stated Maturities expressed in such Security or coupon . . . .

*Id.* at *10. The court found that the express language of this provision did not limit the unconditional right for payment of principal and interest to unpaid or past due principal and interest, despite the fact that the provision referenced suits for payment on the maturity date. *Id.* Thus, the plaintiffs had standing to sue. Here, Section 508 has nearly identical language to that considered by the *Cendant* court.

Similarly, in *Continental Casualty*, in addition to a no-action clause, the indenture included a provision that, like here, exempted from the no-action clause actions to enforce the payment of principal and interest. 1998 WL 513054, at *4. The relevant provision provided:

> [N]othing in this Article VII shall affect or impair the right of any Bondowner to enforce the payment of the principal of the interest on his Bond, or the obligation of the Agency to pay the principal and interest on each Bond to the owner thereof at the time and place in said Bond expressed.

*Id.* This language is very similar to the language in Section 508 of the 2016 Notes Indenture, which exempts suits for unpaid principal and interest and does not expressly limit its application to suits for unpaid principal and interest. In the absence of such an express limitation, Plaintiff's suit falls within Section 508's provisions. *See Cont'l Cas.*, 1998 WL 513054, at *5 ("[i]n the absence of such an express limitation, the Court finds that [the plaintiff's] suit falls within §

15

715's provisions for suits for payment of principal and interest despite the fact that [the plaintiff] seeks payment for interest that had not accrued at the time it initiated suit").

The cases Defendants cite (Mot. at 19) do not compel a different result. In each of the three cases cited by Defendants, the courts considered indenture provisions that, regardless of the no-action clause, included express language that a bondholder had a right to institute suit to enforce payment of principal and interest "on or after" the due dates expressed in the debentures. *Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992); *Emmet & Co., Inc. v. Catholic Health East*, 37 Misc. 3d 854, 859 (N.Y. Sup. Ct. 2012); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 859 F. Supp. 743, 748 (S.D.N.Y. 1994). Based on this language, which unlike here expressly refers to suits after the due date, each court determined that the indentures restricted the exception to suits for past due payment and interest only. *Id.*

Here, the 2016 Notes Indenture exempts from the no-action clause suits "to receive payment of the principal of and any premium and . . . interest . . . ***on the respective***" due dates. 2016 Notes Indenture, § 508 (emphasis added). The difference of language in the 2016 Notes Indenture and the indentures discussed in the cases cited by Defendants, particularly the omission of "after" the due date, is to be interpreted as intentional. *Quadrant*, 23 N.Y.3d at 560 ("[I]f parties to a contract omit terms – particularly, terms that are readily found in other, similar contracts – the inescapable conclusion is that the parties intended the omission").

For these reasons, Defendants' argument that Plaintiff's state law claims fall squarely within the 2016 Notes Indenture's no-action clauses fails.[8]

---

[8] Defendants' reliance on *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13 Civ. 519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) is misplaced. While the court dismisses one of the plaintiff's declaratory action claims against one of the defendants, it did not even consider the exception that applies here regarding a holder's absolute right to receive payment of principal and interest. Further the no-action clause included express language conditioning suit on "a

B.   Plaintiff Is Excused From Compliance With The No-Action Clause Because A Demand On The Indenture Trustee, Who Had Already Agreed To The Supplemental Indentures At The Time Plaintiff Commenced The Action, Would Be Futile.

Even if Plaintiff's claims did fall within the scope of the no-action clause in the 2016 Notes Indenture (which they do not) any requirement that Plaintiff demand that the indenture trustee sue itself for breaches under the 2016 Notes Indenture would be excused as futile. It is well settled that no-action clauses do not apply to suits against indenture trustees as "it would be absurd to require the [bond]holders to ask the trustee to sue itself." *Cruden*, 957 F.2d at 968. At the time Plaintiff commenced this action, the successor indenture trustee of the 2016 Notes, Law Debenture Trust Company of New York, had already approved the Amendments and had executed the Supplemental Indentures. Thus, the indenture trustee would have undoubtedly refused to undertake the action. *See id.*

Furthermore, as a matter of equity, the secret deal was first disclosed on August 12, 2014, and consummated just ten days later on August 22, 2014, well before Plaintiff could have even

---

continuing Event of Default." Because the parties agreed that the allegations did not pertain to an event of default, the plain language of that particular no-action clause barred the suit. Moreover, the court upheld the same plaintiff's declaratory judgment claims against another defendant, the indenture trustee and collateral administrator, on the grounds that it would be futile to ask the trustee of the security to sue itself. *Id.* (citing *Cruden*, 957 F.2d at 986). *House of Eur.* is also contrary to New York case law exempting from no-action clauses declaratory judgment actions that will equally benefit noteholders. *See Kelley v. Prudence Co.*, 144 Misc. 651, 654 (N.Y. Sup. Ct. 1932) (declaratory judgment claim not barred by no-action clause where stated purpose of clause was "to promote and protect the equal ratable rights of every holder of the bonds…"); *see also Borg v. N.Y. Majestic Corp.*, 139 N.Y.S.2d 72, 77 (N.Y. Sup. Ct. 1954) (bondholder may seek a declaration as to the proper interpretation of an indenture provision despite failure to comply with no-action clause).   Defendants also improperly rely on *Feldbaum v. McCrory Corp.*, Nos. 11866, 11920, 12006, 1992 WL 119095 (Del. Ch. June 2, 1992), an unpublished Delaware opinion, to support their argument that Plaintiff's breach of the duty of good faith and fair dealing is "indenture-based" and thus barred by the no-action clause. In *Feldbaum*, while the court held the no-action clause barred the plaintiff's breach of the duty of good faith and fair dealing claim, it specifically recognized the exception asserted by Plaintiff here, which was not

complied with the 60-requirement set forth in 2016 Notes Indenture Section 507. Moreover, while the purpose of a no-action clause is to prevent expensive lawsuits that do not have the support of a substantial portion of the noteholders and that may not be in their "collective economic interest,"[9] the Preferred Noteholders – holders representing $130.2 million aggregate principal amount of 2016 Notes – effectively flouted the collective interest of the minority noteholders in the private transaction with Defendants that resulted in a windfall to the Preferred Noteholders and Amendments that left the remaining noteholders with unsecured indebtedness issued by an insolvent entity, CEOC, that is unlikely to ever be able to satisfy the 2016 Notes.

III.   **DEFENDANTS BREACHED THE 2016 NOTES INDENTURE BY ENTERING INTO THE AGREEMENT AND THE 2016 NOTES SUPPLEMENTAL INDENTURE.**

To state a breach of contract claim under New York law, a plaintiff must allege: (1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach. *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 2013 WL 909184, at *1 (2d Cir. Mar. 12, 2013); *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). The Complaint adequately alleges each of these elements.

A.   Since The Release Of The Guarantee Effected A Non-Consensual Change To Plaintiff's Payment Rights And Affects Plaintiff's Practical Ability To Recovery Payment, Defendants Were Required To Seek Plaintiff's Consent To The Agreement And The Amendments.[10]

Plaintiff alleges that Caesars breached Sections 508 and 902(4) of the 2016 Notes Indenture by entering into the 2016 Notes Supplemental Indenture, which has impaired holders' right to payment of principal and interest and to file suit for nonpayment without the consent of

---

asserted by the plaintiff in *Feldbaum*, that claims *other than a claim for the recovery of principal and interest* are subject to the no-action clause. *Id*. at *6 (emphasis added).

[9] *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc*., 837 F. Supp. 2d. 162, 184 (S.D.N.Y. 2011); *see also* Mot. at 16-17.

each holder. Compl. ¶¶ 8, 28, 59, 71, 74. While Defendants argue that the Amendments were proper because they obtained majority consent (from the Preferred Holders who received a windfall for some of their 2016 Notes), Section 902(4) of the 2016 Notes Indenture expressly *prohibited* Caesars from entering into a supplement indenture that modified Section 508 by the unanimous consent of 2016 Notes. Compl. ¶¶ 27, 72; 2016 Notes Indenture, § 902. Because Caesars entered into the 2016 Notes Supplemental Indenture with less than 100% consent, Caesars breached Section 902 of the 2016 Notes Indenture. Compl. ¶¶ 28, 74.

Defendants' argument that there can be no breach here because Plaintiffs have received all payments under the 2016 Notes when due and their legal right to payment has not been impaired is unavailing. Mot. at 20. A missed payment is not a prerequisite to a claim under TIA Section 316(b) or 2016 Notes Indenture Section 508 where, as here, Caesars's "elimination of the guarantors and the simultaneous disposition of all meaningful assets [of CEOC] will effectively eliminated [P]laintiffs' ability to recover [principal and interest] and will remove . . . [the] 'safety net' of a guarantor." *Federated*, 1999 WL 99348, at *7.[11]

> B. The 2016 Notes Indenture Expressly Required Defendants To Redeem The Preferred Noteholders' 2016 Notes In A Fair and Appropriate Manner, Which Did Not Occur When Defendants Purchased The Preferred Noteholders' Notes At Par Plus Accrued Interest.

Plaintiff alleges Defendants breached Section 1103 the 2016 Notes Indenture because Caesars's paying the Preferred Noteholders a premium over market constituted a redemption. Section 1103 requires that the trustee select the 2016 Notes to be redeemed in a manner that is fair and appropriate, should less than all the 2016 Notes be redeemed. Compl. ¶¶ 31, 79; 2016 Notes Indenture, § 1103. Because CEOC and CEC purchased a portion of the 2016 Notes held

---

[10] Plaintiff incorporates the arguments set forth in Section I, *supra*.

[11] *See also* Section II, *supra*.

by the Preferred Noteholders and par plus accrued interest and, pursuant to the Agreement, the 2016 Notes purchased from the Preferred Noteholders were to be cancelled, the transaction, in substance, amounted to a partial redemption. Compl. ¶ 80. While Defendants argue the transaction was a "negotiated purchase," it is indisputable that Caesars failed to follow the 2016 Notes Indenture's rules regarding redemptions. *See* 2016 Notes Indenture, Article IX. Further, the significant premium over market Caesars paid to the Preferred Noteholders, which was done in exchange for those noteholders' agreement to the Amendments that significantly impaired Plaintiff's rights, clearly violated the 2016 Notes Indenture's prohibitions against preferential treatment of one group of noteholders over another. *See* 2016 Notes Indenture, §§ 507, 1103.

Defendants argue that the transaction with the Preferred Noteholders where Defendants paid a premium over market in exchange for agreements to the Amendments was a voluntary open market transaction. Mot. at 21. However, while "[a] selective repurchase of shares in a public corporation … generally does not discriminate because all shareholders can voluntarily realize the same benefit by selling" (*Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1388 (Del. 1995)), that is not the case here because no noteholder, other than the Preferred Noteholders that were privately selected by Defendants, could have received for their securities par plus accrued interest, but only market value, which was well under par value. Compl. ¶ 3. Moreover, the Preferred Noteholders got a par recovery plus interest for their bonds sold in the transaction –the same as what they would have received in a redemption. *Id*. ¶ 2.

Defendants' reliance on *Heine v. Signal Cos., Inc*., No. 74 Civ. 30361977, 1977 WL 930 (S.D.N.Y. Mar. 4, 1977) to support their argument that the transaction with the Preferred Noteholders was a negotiated transaction for certain 2016 Notes and does not constitute a redemption is misplaced. In *Heine*, a post-trial opinion, the "threshold question" before the court

20

was whether a private right of action existed for the plaintiff's federal claims that the defendant violated of the stock exchange listing agreement and company manual. *Id.* at *13. The transaction at issue concerned the company's purchase of shares from a particular group of holders. *Id.* The court analyzed specific requirements in the stock exchange listing agreement in considering whether a company's purchase from a group of stockholders violated the specific terms of the listing agreement. *Id.* at *14. While the plaintiffs argued the transaction should be deemed a redemption to effectuate the purpose of the listing agreement, the court found no ground to take liberties with the generally accepted terminology of redemption. *Id.* However, unlike here, in *Heine*, the company's challenged stock purchase from a particular group of stockholders did not appear to be at a price above market price of the security and was not done in exchange for amendments to documents governing the securities at issue. *Id.*

Defendants take liberties with the facts and holding in *Concord Real Estate CDO 2006-1 v. Bank of Am. N.A.*, 996 A.2d 324, 334-36 (Del. Ch. 2010). *Concord* was an action by an indenture issuer and co-issuer seeking a declaration that they validly delivered for cancellation certain notes that their affiliate surrendered without consideration and with the intent that the obligations represented by the notes be discharged. *Id.* at 325. On a summary judgment motion, the court analyzed the indenture's text to determine which party, the issuer, co-issuer or the trustee, was to instruct the notes registrar to cancel the subject notes. *Id.* at 339. The court held that the notes were discharged when they were voluntarily surrendered without payment and the issuer and co-issuer properly delivered the discharged notes to the trustee for cancellation. *Id.* at 325, 333. The court did not hold that payment for outstanding notes to willing sellers is not a

redemption, as Defendants suggest.[12] Mot. at 22. In fact, unlike here, the issuer did not even pay

for the outstanding notes that its affiliate surrendered without consideration. *Id*. at 325.

C. The Complaint Adequately Pleaded Damages Resulting From Defendants' Breaches
Of The 2016 Notes Indenture.

Plaintiff alleges that Defendants' breaches of the 2016 Notes Indenture, when considered

with Caesars larger scheme to restructure CEOC's debt and transfer out of CEOC and away from

creditors CEOC's most valuable assets in the face of an impending balance sheet restructuring,

effectively eliminate Plaintiff's and the Class members' ability to recover the value of their

investments. Compl. ¶¶ 11, 33-50, 73. Plaintiff further alleges the Amendments have rendered

the 2016 Notes effectively worthless and has impaired Plaintiff's rights under the 2016 Notes

Indenture without his consent. *Id*. ¶¶ 6, 8, 33, 59, 74. As a result of the Amendments, the value of

the 2016 Notes has declined. *Id*. ¶ 9. These are sufficient damage allegations at the pleading

stage. *See Oklahoma Police Pension and Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 71

(S.D.N.Y. 2013) (plaintiff's allegations that breaches of the agreement caused mortgage loans to

diminish in value, which resulted in damages to plaintiff, "raised issues of fact that cannot be

resolved on a motion to dismiss"); *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.*, No. 09

CV 01796, 2012 WL 3890128, at *11 (S.D.N.Y. Sept. 7, 2012) ("That damages are uncertain, or

may not exist, is an insufficient reason to grant a motion to dismiss"); *Medinol Ltd. v. Boston

Scientific Corp.*, 346 F. Supp. 2d 575, 601 (S.D.N.Y. 2004) ("Even if [plaintiff] cannot prove any

damages . . . it may still maintain its claim for breach of contract and, if it is successful, recover

nominal damages"); *Argonaut P'ship, LP v. Bankers Tr. Co. Ltd.*, No. 96 CIV. 1970, 96 CIV.

---

[12] The *Concord* court considered the related issue of whether the subject notes were cancelled or
still outstanding. If the subject notes were not in fact cancelled and thus outstanding, certain
classes of noteholders were entitled to have their notes redeemed. *Id*. at 330. However, because

2222, 1997 WL 45521, at *5 (S.D.N.Y. Feb. 4, 1997) (a breach of contract case "is ripe immediately upon the breach, even where damages remain uncertain").[13] Defendants do not and cannot challenge Plaintiff's declaratory judgment claim for lack of injury, as Plaintiff has sufficiently alleged a substantial controversy exists between the parties. Compl. ¶ 58. *See Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1990) (to survive a motion to dismiss, a request for declaratory judgment requires only a substantial controversy between parties having adverse interests of sufficient immediacy).

Moreover, even if Defendants have not yet defaulted on the payment provisions in the 2016 Notes Indenture, a cognizable harm exists where a defendant is insolvent or insolvency is threatened. *See, e.g., Federated*, 1999 WL 993648 at *8 (granting preliminary injunction, finding irreparable harm where noteholders presented evidence that holders would not be able to recover the principal due under the notes at the time of maturity due to defendant's planned insolvency).

---

the court determined the notes surrendered for no consideration were in fact cancelled, the issue of whether another class of noteholders was entitled to a redemption was moot.

[13] The cases cited by Defendants do not help their position. In *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765 (2012), on a summary judgment motion, the court considered only the issue of whether the plaintiff's claims were barred by the applicable statute of limitations. *Id.* at 767. Further, the court limited the opinion to accrual of claims under insurance contracts that involve a retrospective premium. *Id.* at 775. In *Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*, No. 10 Civ. 2329, 2010 WL 4449366 (S.D.N.Y Oct. 13, 2010), while the court noted the plaintiff's allegations that it suffered damages as a result of subordination of its security interest were speculative, the court ultimately held the plaintiff had properly pled contract damages and the plaintiff did not allege the breach had resulted in a loss of value of the security, as Plaintiff does here. In *Cruden*, the court when considering whether a no-action clause applied to bar the plaintiff's claim and considering specific language in the relevant indenture (which differs from the language in the 2016 Notes Indenture) noted that damages could not have been ascertained had the plaintiffs sued several years prior because there would not have been a default. 957 F.2d at 968. Thus, the *Cruden* court was not considering the issue of whether the plaintiffs had properly pled breach of contract damages.

IV.   **DEFENDANTS BREACHED THE IMPLIED COVENENANT OF GOOD FAITH AND FAIR DEALING BY ENTERING INTO THE 2016 NOTES SUPPLEMENTAL INDENTURE.**

The duty of good faith and fair dealing is "[i]mplicit in all contracts … in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). The duty of good faith and fair dealing "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (citing *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87 (1933)), and this "pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Id.* A claim for breach of the implied covenant of good faith and fair dealing is properly stated where, as here, a party acts in a manner that deprives the other party of the benefit of its bargain, regardless of any technical breach of contract. *See Chase Manhattan Bank, N.A. v. Keystone Distribs.*, 873 F. Supp. 808, 816 (S.D.N.Y. 1994).

Defendants argue that Plaintiff's breach of the implied covenant of good faith and fair dealing claim must fail because his contract claims are not viable or imply a covenant inconsistent with the terms of the 2016 Notes Indenture. Mot. at 25. For the reasons set forth in Section III, *supra*, Plaintiff has properly asserted breach of contract claims based on Defendants' breaches of specific covenants of the 2016 Notes Indenture and is not seeking to imply covenants inconsistent with the Indentures' terms.[14]

Further, even assuming Plaintiff had not properly stated a breach of contract claim, he may and has stated a breach of the implied covenant of good faith and fair dealing claim. *See*

---

[14] For these reasons, the cases cited by Defendants are inapplicable. *See Triton Partners LLC v. Prudential Secs. Inc.*, 301 A.D.2d 411, 411 (1st Dep't 2003) (plaintiff sought to enforce contract terminated by defendants where contract permitted party to terminate contract on notice); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Xerox Corp.*, 25 A.D. 3d 309 (1st Dep't 2006) (while

*Wertheim Schroeder & Co. v. Avon Prods., Inc.*, No. 91 Civ. 2287 (PKL), 1993 WL 126427, at *12 (S.D.N.Y. Apr. 1, 1993). Plaintiff alleges Defendants engaged in a scheme to divert assets away from CEOC to CEC and away from the reach of CEOC creditors (including Plaintiff). Compl. ¶¶ 11, 33, 34-50, 73. This scheme, together with the removal of the CEC Guarantee, effectively assured that CEOC will not have funds available for payment of principal on the 2016 Notes when they become due. These allegations give rise to a breach of Defendants' duty of good faith and fair dealing. *See Chase Manhattan Bank*, 873 F. Supp. at 816 (upholding breach of duty of good faith and fair dealing claim where plaintiff alleged defendant manipulated sales of funds to dry up stream of income defendant was obligated to play plaintiff and had taken steps to keep the income for itself); *Dayan Enters., Corp. v. Nautica Apparel, Inc.*, No. 03 Civ. 5706(LLS), 2003 WL 22832706, at *2 (S.D.N.Y. Nov. 26, 2003) (finding plaintiff had sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing where it alleged defendant gave its subsidiary discounts in order to deprive plaintiff of royalty payments).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety.

---

there is no analysis of the issue, it appears the plaintiff sought to enforce rights against the express terms of the contract, which is not the case here).

Dated: December 3, 2014

| **GRANT & EISENHOFER P.A.** | **GARDY & NOTIS, LLP** |
|---|---|
| | By: */s/ Meagan Farmer* |
| Jay W. Eisenhofer | Mark C. Gardy |
| Gordon Z. Novod | James S. Notis |
| Elizabeth Shofner | Meagan Farmer |
| 485 Lexington Avenue, 29th Floor | Tower 56 |
| New York, New York 10017 | 126 East 56th Street, 8th Floor |
| Tel:  646-722-8500 | New York, New York 10022 |
| Fax:  646-722-8501 | Tel:  212-905-0509 |
| | Fax:  212-905-0508 |

*Attorneys for Plaintiff*