UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREDERICK BARTON DANNER,
Individually and On Behalf of All Others
Similarly Situated,

                     Plaintiff,

          v.                                    Case 1:14-cv-07973-SAS
                                                [Rel. Case 1:14-cv-07091-SAS]
CAESARS ENTERTAINMENT
CORPORATION and CAESARS
ENTERTAINMENT OPERATING
COMPANY, INC.,

                     Defendants.

## PLAINTIFF FREDERICK BARTON DANNER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**GARDY & NOTIS, LLP**

Mark C. Gardy
James S. Notis
Meagan Farmer
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel:  212-905-0509
Fax:  212-905-0508

**GRANT & EISENHOFER P.A.**

Jay W. Eisenhofer
Daniel L. Berger
Gordon Z. Novod
Brenda Szydlo
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel:  646-722-8500
Fax:  646-722-8501

*Attorneys for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

OVERVIEW OF RELEVANT FACTS AND PROVISIONS OF THE
      2016 NOTES INDENTURE AND THE TRUST INDENTURE ACT .............................. 3

ARGUMENT ............................................................................................................ 5

I.     LEGAL STANDARD FOR SUMMARY JUDGMENT ..................................... 5

II.    THE UNDISPUTED FACTS ESTABLISH THAT CEC REMOVED
     THE GUARANTEE WITHOUT DANNER'S CONSENT AND IMPAIRED
     HIS RIGHT TO RECEIVE PAYMENT OF THE PRINCIPAL AND
     INTEREST, ENTITLING DANNER TO SUMMARY JUDGMENT
     ON COUNTS II AND III .......................................................................... 6

          A.  THE REMOVAL OF THE GUARANTEE IMPAIRED PLAINTIFF'S
             RIGHT TO RECEIVE PAYMENT OF THE PRINCIPAL AND INTEREST
             ON HIS 2016 NOTES AND IMPAIRED HIS RIGHT TO INSTITUTE
             SUIT FOR THE ENFORCEMENT OF THAT PAYMENT RIGHT .................... 8

          B.  CEC AND CEOC DID NOT OBTAIN, OR EVEN SEEK, THE
             CONSENT OF EVERY 2016 NOTEHOLDER TO AMEND THE
             2016 NOTES INDENTURE .................................................................. 10

          C.  CEC MADE BINDING JUDICIAL ADMISSIONS THAT THE
             GUARANTEE WAS RELEASED AS A RESULT OF THE AUGUST
             TRANSACTION, AND THEREFORE SHOULD BE PRECLUDED
             FROM ARGUING THAT THE 5% STOCK SALE AND THE PIP
             RELEASED THE GUARANTEE ............................................................. 10

III.   THIS COURT SHOULD DECLARE THAT THE FIRST SUPPLEMENTAL
     INDENTURE IS INEFFECTIVE, INVALID AND VOID, AND THAT THE
     2016 NOTES INDENTURE, AS IT EXISTED BEFORE THE FIRST
     SUPPLEMENTAL INDENTURE, IS IN FULL FORCE AND EFFECT
     BECAUSE THE FIRST SUPPLEMENTAL INDENTURE VIOLATED
     SECTION 316(B) OF THE TIA AND SECTIONS 508 AND 905 OF
     THE 2016 NOTES INDENTURE. ............................................................ 13

IV.   THE UNDISPUTED FACTS ESTABLISH THAT DANNER IS ENTITLED
     TO SUMMARY JUDGMENT ON COUNT VI FOR BREACH OF
     CONTRACT UNDER SECTION 501(5) AND 502 OF THE 2016

NOTES INDENTURE SINCE CEOC FILED A VOLUNTARY
PETITION FOR RELIEF UNDER THE BANKRUPTCY CODE...................................14

CONCLUSION..............................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of New York v. First Millennium, Inc.*,
  607 F.3d 905 (2d Cir. 2010)...................................................................................................7

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
  85 F.3d 970 (2d Cir. 1996)....................................................................................................6

*In re Board of Dirs. of Multicanal S.A.*,
  307 B.R. 384 (Bankr. S.D.N.Y. 2004)..................................................................................9

*BOKF, N.A. v. Caesars Entm't Corp.*,
  Nos. 15-cv-1561, 15-cv-4634, 2015 WL 5076785 (S.D.N.Y. Aug. 27, 2015)............... *passim*

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................................................6

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
  241 F.3d 154 (2d Cir. 2001)................................................................................................13

*Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*,
  No. 99 CIV 10517 HB, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999) .....................................8

*In re Initial Pub. Offering Sec. Litig.*,
  383 F. Supp. 2d 566 (S.D.N.Y.)....................................................................................11, 12

*Kramer v. Lockwood Pension Servs.*,
  653 F. Supp. 2d 354 (S.D.N.Y. 2009)............................................................................13, 14

*Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Corp.*,
  No. 14-cv-8584, 2015 WL 3867643 (S.D.N.Y. June 23, 2015) ...................................8, 9, 10

*Marblegate Asset Mgmt. v. Education Mgmt. Corp.*,
  75 F. Supp. 3d 592 (S.D.N.Y. 2014).....................................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...............................................................................................................6

*MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*,
  80 F. Supp. 3d 507 (S.D.N.Y. 2015)....................................................................2, 8, 10, 14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  980 F. Supp. 2d 425 (S.D.N.Y. 2013)..................................................................................10

*Mitchell v. Washingtonville Cen. School Dist.*,
190 F.3d 1 (2d Cir. 1999) ..................................................................11

*Penn Mut. Life Ins. Co. v. Wolk*,
739 F. Supp. 2d 387 (S.D.N.Y. 2010)..................................................14

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994)...................................................................10

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
743 F.3d 11 (2d Cir. 2014).....................................................................5

*UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*,
793 F. Supp. 448 (S.D.N.Y. 1992)..........................................................9

*Varabiev v. Bank Leumi Le Israel (Switzerland)*,
No. 03 Civ. 3063, 2004 U.S. Dist. LEXIS 7536 (S.D.N.Y. April 30, 2004)..........................11

*Windsor v. United States*,
699 F.3d 169 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) ....................6

**Statutes**

28 U.S.C. § 2201(a) .................................................................................13

11 U.S.C. § 101, *et seq.*..........................................................................3, 4, 14

15 U.S.C. §§ 77aaa – 77bbbb ...................................................................1

15 U.S.C. §§ 77ppp(b) ...................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................5

Fed. R. Civ. P. 30(b)(6)...........................................................................11

Local Civil Rule 56.1 ................................................................................1

Plaintiff Frederick Barton Danner submits this Memorandum of Law in Support of his Motion for Partial Summary Judgment.

## PRELIMINARY STATEMENT

This action is predicated upon a single transaction whereby Defendant Caesars Entertainment Corporation ("CEC") secured the removal of its Guarantee of unsecured bonds issued by Caesars Entertainment Operating Company, Inc. ("CEOC"), in breach of the applicable bond indenture and the Trust Indenture Act of 1939 (the "TIA"). 15 U.S.C. §§77aaa to 77bbbb. The August Transaction[1] has materially impaired Plaintiff's ability to recover principal and interest owed on his 2016 Notes and impaired his ability to commence an action for the enforcement of any such payment. The transaction purported to strip the Guarantee given by CEC, leaving Plaintiff and other non-Preferred Noteholders with an illusory right to collect principal from CEOC, a company with $17 billion of secured debt that on January 15, 2015, filed a voluntary petition for relief and became a debtor-in-possession under the Bankruptcy Code.

It is undisputed that no consent was given by Plaintiff or anyone other than the Preferred Noteholders to the August Transaction or First Supplemental Indenture. Rather than seeking the consent of all holders of 2016 Notes, as required by the 2016 Notes Indenture and the TIA, this transaction was accomplished by agreement with certain noteholders who agreed to sell their votes to impair the minority noteholders. Caesars entered into the First Supplemental Indenture that removed CEC's guarantee of the 2016 Notes, resulting in the impairment of minority noteholders such as Plaintiff. CEC thus engineered the private transaction to achieve exactly what Section 316(b) of the TIA was intended to prevent. In altering Plaintiff's right to receive

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning as set forth in Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in Support of Danner's Motion for Partial Summary Judgment ("SMF"), filed contemporaneously herewith and incorporated by reference.

payment of principal and interest on the 2016 Notes and to institute suit for the enforcement of any such payment, Caesars violated Section 316(b) of the TIA and Section 508 of the 2016 Notes Indenture, the latter of which specifies that such rights are absolute and unconditional.

The August Transaction involved the "renegotiating a debt obligation with a majority of noteholders to the detriment of a nonconsenting minority *under the same indenture.*" *See BOKF, N.A. v. Caesars Entm't Corp.*, Nos. 15-cv-1561, 15-cv-4634, 2015 WL 5076785, at *9 (S.D.N.Y. Aug. 27, 2015) ("*BOKF*") (emphasis in original). This impaired Plaintiff's rights under Section 316(b). *See id.* Moreover, as this Court previously observed in denying CEC's motion to dismiss, "removal of the Guarantees through the August Transaction is an impermissible out-of-court debt restructuring achieved through collective action. This is exactly what TIA section 316(b) is designed to prevent." *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.,* 80 F. Supp. 3d 507, 516 (S.D.N.Y. 2015) ("*MeehanCombs*").

Any contention that CEC's guarantee of the 2016 Notes was released prior to the August Transaction is inconsistent with judicial admissions made by CEC to this Court in the *BOKF* action, as well as statements made by CEC to the Second Circuit with respect to its proposed appeal of the *BOKF* decision. CEC should be precluded from arguing that the Guarantee was released prior to the August Transaction, namely by the 5% Stock Sale or the PIP. Of course, CEC's making of this argument strains credulity, given that Caesars paid $89.6 million for 2016 Notes (plus $65.8 million for 2017 Notes) to the Preferred Noteholders in the August Transaction in order to amend the 2016 Notes Indenture to terminate the Guarantee.

The right of Plaintiff to receive payment of principal and interest owed on the 2016 Notes and the right to institute suit to collect such payment were impaired by the First Supplemental Indenture. Plaintiff, like all non-Preferred Noteholders, did not consent to the First Supplemental

Indenture and should be afforded the protections contained in Section 508. Accordingly, Plaintiff is entitled to partial summary judgment against CEC on the following counts of his Amended Complaint: (i) Count II, for violations of Section 316(b) of the TIA; (ii) Count III, for breach of contract under Section 508 of the 2016 Notes Indenture which, like TIA Section 316(b), prohibits the termination or release of the Guarantee without Plaintiff's consent; and (iii) Count I, which seeks a declaration that the First Supplemental Indenture is ineffective, invalid and void, and that the original 2016 Notes Indenture is in full force and effect.

Should the Court agree with Plaintiff's arguments, Plaintiff would also be entitled to summary judgment on Count VI, which alleges breach of contract under Sections 501(5)(a) and 502 of the 2016 Notes Indenture for CEC's failure to pay on the Guarantee obligations following an event of default. As the Court recognized in *BOKF*, "[i]n January 2015, CEOC and 172 of its subsidiaries filed voluntary petitions under chapter 11 of the Bankruptcy Code." *BOKF*, at *3. That voluntary bankruptcy filing of CEOC was an immediate "Event of Default" under the 2016 Notes indenture, resulting in CEC's obligations under the 2016 Notes becoming immediately due and owing. Moreover, CEC has admitted that CEOC's voluntary bankruptcy filing constituted an Event of Default that accelerated CEOC's obligations under the 2016 Notes Indenture. Thus, the undisputed facts show that Plaintiff is entitled to summary judgment on Count VI.

## OVERVIEW OF RELEVANT FACTS AND PROVISIONS OF THE 2016 NOTES INDENTURE AND THE TRUST INDENTURE ACT

On August 12, 2014, the Defendants announced the August Transaction which, upon consummation, purported to release CEC from its guarantee obligation on the 2016 Notes (as well as the 2017 Notes).[2] SMF ¶ 30. Pursuant to the transaction, Caesars agreed to pay certain

---

[2] Although the 2017 Notes were also subject to the August Transaction discussed herein, they are not subject to this action.

Preferred Noteholders (holding at least 51% of the 2016 Notes) $89.4 million for 2016 Notes with that principal amount, plus accrued and unpaid interest. *Id.* ¶¶ 34-36. In return, the Preferred Noteholders agreed to and subsequently did vote their 2016 Notes to consent to the First Supplemental Indenture that amended the 2016 Notes Indenture to, *inter alia,* remove CEC's Guarantee. *Id.* ¶¶ 39, 40, 44, 45. The amendments to the 2016 Notes Indenture were made without the consent of Plaintiff and the other Non-Preferred Noteholders. *Id.* ¶¶ 55, 56.

As a result of this collusive deal, the remaining 2016 Noteholders were left with unsecured notes issued by CEOC, an entity that on January 15, 2015 became a debtor-in-possession under Chapter 11 of the Bankruptcy Code, that were no longer guaranteed by CEC. SMF ¶¶ 7, 11, 64, 65. In connection with CEOC's bankruptcy filing, CEOC, CEC and certain secured creditors agreed to a restructuring support agreement that provides for a *de minimus* recovery to 2016 Noteholders. *Id.* ¶¶ 71, 72. Without the right to pursue CEC for payment under the Guarantee, Plaintiff and the other non-Preferred Noteholders have no practical prospect of more than a *de minimus* recovery on such notes. The First Supplemental Indenture therefore impaired Plaintiff's rights under the TIA and under the 2016 Notes Indenture. *Id.* ¶ 7, 9.

TIA Section 316(b) provides in pertinent part:

> ***Notwithstanding any other provision of the indenture to be qualified***, ***the right of any holder*** of any indenture security ***to receive payment of the principal of and interest on such indenture security***, on or after the respective due dates expressed in such indenture security, ***or to institute suit for the enforcement of any such payment*** on or after such respective dates, ***shall not be impaired or affected without the consent of such holder*** …

SMF ¶ 83. Similarly, Section 508 of the 2016 Notes Indenture provides:

> ***Notwithstanding any other provision in this Indenture***, ***the Holder of any Security shall have the right, which is absolute and unconditional, to receive payment of the principal*** and … ***interest on such Security*** on the respective Stated Maturities expressed in such Security … ***and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder***.

4

SMF ¶ 20. Section 508 is mandated by and largely mirrors section 316(b) of the TIA while adding that such rights are "absolute and unconditional." SMF ¶¶ 21, 22. Moreover, the 2016 Notes Indenture requires that every supplemental indenture comply with the TIA. SMF ¶ 18.

Section 1501(1) of the 2016 Notes Indenture states that the Guarantee is made by CEC "irrevocably and unconditionally … to each Holder of a Security." SMF ¶ 23. Additionally, the 2016 Notes Indenture provides that "Guarantor hereby agrees that its obligations hereunder shall be unconditional, irrespective of … any waiver or consent by any Holder of such Securities with respect to any provisions hereof." *Id.*[3]

Section 501(5)(a) of the 2016 Notes Indenture provides that commencement of a voluntary bankruptcy case constitutes an event of default, upon which Caesars' obligations under the 2016 Notes become immediately due. SMF ¶ 15. Additionally, Section 502 states:

> If an Event of Default specified in Section 501(5) or (6) shall occur, the principal amount … of and accrued and unpaid interest, if any, on all outstanding [2016 Notes] shall *ipso facto* become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holder.

SMF ¶ 16. Finally, the 2016 Notes Indenture is explicit that amendments to Section 508 require the consent of all holders of 2016 Notes. SMF ¶ 17.

## ARGUMENT

## I.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rivera v.*

---

[3] While the 2016 Notes Indenture provides for the specific circumstances under which the Guarantee may be terminated, these are not applicable here as there is no dispute that Caesars executed the First Supplemental Indenture that purported to remove the Guarantee. Execution of the First Supplemental Indenture is undisputed evidence that the Preferred Noteholders "consented to the changes and eliminations effected by [the First] Supplemental Indenture…" SMF ¶ 48. CEC is also judicially estopped from arguing that the 5% Stock Sale and PIP caused the release of the Guarantee. *See* I.C below.

*Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations omitted). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, … which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party succeeds in showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that an issue of material fact does exist. *Id.* at 331. The non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. THE UNDISPUTED FACTS ESTABLISH THAT CEC REMOVED THE GUARANTEE WITHOUT DANNER'S CONSENT AND IMPAIRED HIS RIGHT TO RECEIVE PAYMENT OF THE PRINCIPAL AND INTEREST, ENTITLING DANNER TO SUMMARY JUDGMENT ON COUNTS II AND III

Both the TIA and the 2016 Notes Indenture expressly provide that Plaintiff may commence an action to enforce his right to receive payments of principal and interest.[4] Section 316(b) of the TIA and Section 508 of the 2016 Notes Indenture both protect each and every

---

[4] Because the language of Section 508 of the 2016 Notes Indenture is required by Section 316(b) of the TIA, Plaintiff addresses both statutory claims and contract claims simultaneously. *See Marblegate Asset Mgmt. v. Education Mgmt. Corp.* ("*Marblegate I*"), 75 F. Supp. 3d 592, 610 (S.D.N.Y. 2014) ("because [the indenture section establishing the noteholders' unconditional right to receive principal, premium and interest] precisely replicates the protections of Section 316(b) of the [TIA], the questions presented on the merits essentially boil down to a dispute over the scope of the protections afforded by the Trust Indenture Act…"); *see also Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996) ("The interpretation of the indenture provisions mandated by the [Trust Indenture] Act does not depend on ordinary contract principles—the intent of the parties—but depends on an interpretation of the legislation") (quotation omitted).

holder's right to receive payment of the "principal … and … interest on such Security" and "to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder." SMF ¶ 20, 21, 83. Additionally, the 2016 Notes Indenture requires that every supplemental indenture comply with the TIA. SMF ¶ 18. Lastly, Section 508 is quite clear that each noteholder's right to receive principal and interest and to institute suit for the enforcement of that right is "absolute and unconditional," which may not be disregarded.[5]

Thus, with respect to Counts II and III, the Court must determine (i) whether Plaintiff's right to receive payment of principal and interest, or to institute suit for the enforcement of any such payment, was impaired by either (a) an amendment to a core term of the debt instrument, or (b) an out-of-court debt reorganization; and, (ii) whether Plaintiff consented to such impairment. *See BOKF*, 2015 WL 5076785, at *5.

---

[5] As the Second Circuit observed in *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010), the inclusion of the phrase "absolute and unconditional" should be given meaning and its heightened protections may not be disregarded because it falls within a section mandated by the TIA. ("We cannot read that right out of the contract because it is embedded in a provision that arguably was included for another reason.").

Here, the 2016 Notes Indenture is governed by New York law (SMF ¶ 24), which provides "[t]he court's function in interpreting a contract is to apply the meaning intended by the parties, as derived from the language of the contract in question," and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *BOKF*, *4 (internal citations omitted). The terms "absolute and unconditional" have a "definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* Thus, as a matter of law, the terms "absolute and unconditional" need to be given meaning, and provide a separate basis for why the August Transaction and First Supplemental Indenture resulted in a breach of Section 508.

A.   **THE REMOVAL OF THE GUARANTEE IMPAIRED PLAINTIFF'S RIGHT TO RECEIVE PAYMENT OF THE PRINCIPAL AND INTEREST ON HIS 2016 NOTES AND IMPAIRED HIS RIGHT TO INSTITUTE SUIT FOR THE ENFORCEMENT OF THAT PAYMENT RIGHT.**

"[W]hen a company takes steps to preclude any recovery by noteholders for payment of principal coupled with the elimination of the guarantors for its debt, … such action … constitute[s] an impairment …." *MeehanCombs*, 80 F. Supp. 3d at 515 (quoting *Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*, No. 99 CIV 10517 HB, 1999 WL 993648, at *7 (S.D.N.Y. Nov. 2, 1999) (Baer, J.)) (emphasis in original) (internal quotations omitted). In denying CEC's motion to dismiss, this Court previously "rejected CEC's arguments that section 316(b) protected only a noteholder's *legal* right to receive payment when due..." *BOKF*, at *4.

Judge Baer in *Federated* observed that "[b]y defendant's elimination of the guarantors and the simultaneous disposition of all meaningful assets, defendant will effectively eliminate plaintiffs' ability to recover and will remove a holder's 'safety net' of a guarantor, which was obviously an investment consideration from the outset." 1999 WL 993648, at *7. The court added, "[t]aken together, ***these proposed amendments could materially impair or affect a holder's right to sue. A holder who chooses to sue for payment at the date of maturity will no longer, as a practical matter, be able to seek recourse*** from either the assetless defendant or from the discharged guarantors." *Id.* (emphasis added).

This Court "adhere[s] to the view that section 316(b) protects a noteholder's practical ability, as well as the legal right, to receive payment when due, and has concluded that section 316(b) protects more than simply 'formal, explicit modification of the legal right to receive payment' which would allow 'a sufficiently clever issuer to gut the Act's protections.'" *BOKF*, at *5 (quoting *Marblegate I*, 75 F. Supp. 3d at 613); *c.f. Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Corp.*, No. 14-cv-8584, 2015 WL 3867643, at *28 (S.D.N.Y. June 23, 2015)

("*Marblegate II*") ("[T]o interpret Section 316(b) as protecting merely the right to sue for payment, and not any substantive right to receive such payment, would be unfaithful to the text and the drafting history.").

"[I]in order to prove an impairment under section 316(b), plaintiffs must prove either an amendment to a core term of the debt instrument, or an out-of-court debt reorganization." *BOKF*, at *5 (internal reference omitted). "[A]lleged impairment … must be evaluated as of the date that payment becomes due, because it is only then that the bondholders' right to payment has been affected by certain actions and/or transactions undertaken by issuers or guarantors." *Id*. Directly applicable here, this Court also observed that "renegotiating a debt obligation with a majority of noteholders to the detriment of a nonconsenting minority *under the same indenture* would be an impairment" under section 316(b). *BOKF*, at *9.

CEC's removal of the Guarantee as a result of the August Transaction and the First Supplemental Indenture impaired Plaintiff's right to receive payment from CEC in exactly the "straightforward" fashion mentioned in *Marblegate II* and by this Court in *BOKF*. *Id*. ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ SMF ¶¶ 39-

41, 45, 47, 54-59. As Plaintiff and all 2016 Noteholders are protected from the removal of the Guarantee absent unanimous consent in this context, CEC thus impaired Plaintiff's rights.

The conduct of Caesars and the Preferred Noteholders here was one type of collusive activity that Congress intended to stop through the enactment of TIA Section 316(b).[6] In

---

[6] One of the goals of the TIA was to stop collusive activities by and between issuers and groups of bondholders that would govern the rights of minority bondholders. *See In re Board of Dirs. of Multicanal S.A.*, 307 B.R. 384, 388 (Bankr. S.D.N.Y. 2004); *see also UPIC & Co. v.*

*Marblegate II*, at *11, Judge Failla extensively reviewed the legislative history of the TIA, concluding that the purpose of the TIA was to prevent "nonconsensual majoritarian debt restructuring[s]." Judge Failla rejected the view "that the [TIA] was targeted only at a particular method of restructuring—straightforward amendment—as opposed to an undesirable result: allowing a majority to force a non-assenting security holder to accept a reduction or postponement of his claim." *Id.* at *12 (internal quotation omitted).

### B.   CEC AND CEOC DID NOT OBTAIN, OR EVEN SEEK, THE CONSENT OF EVERY 2016 NOTEHOLDER TO AMEND THE 2016 NOTES INDENTURE.

Section 316(b) requires the consent of each noteholder to an impairment of that holder's right to receive payment. SMF 85. "As a result of section 316(b), a company cannot—outside of bankruptcy—alter its obligation to pay bonds without the consent of each bondholder." *MeehanCombs*, 80 F. Supp. 3d at 512-13. ███████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ SMF

¶¶ 55, 57-59. Plaintiff, like the other non-Preferred Noteholders, did not consent to the removal of the Guarantee, and therefore is entitled to summary judgment on Counts II and III of his Amended Complaint.

### C.   CEC MADE BINDING JUDICIAL ADMISSIONS THAT THE GUARANTEE WAS RELEASED AS A RESULT OF THE AUGUST TRANSACTION, AND THEREFORE SHOULD BE PRECLUDED FROM ARGUING THAT THE 5% STOCK SALE AND THE PIP RELEASED THE GUARANTEE

A court can appropriately treat statements in briefs or pleadings as binding judicial admissions. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994); *In re Methyl Tertiary Butyl*

---

*Kinder-Care Learning Ctrs., Inc.*, 793 F. Supp. 448, 452-53 (S.D.N.Y. 1992) ("Enactment of Section 316(b) is attributable to the Securities Exchange Commission's concern about the motivation of insiders and quasi-insiders to destroy a bond issue through insider control....").

*Ether Prods. Liab. Litig.*, 980 F. Supp. 2d 425, 439 (S.D.N.Y. 2013) (Scheindlin, J.); *Varabiev v. Bank Leumi Le Israel (Switzerland)*, No. 03 Civ. 3063, 2004 U.S. Dist. LEXIS 7536, at *14 (S.D.N.Y. April 30, 2004) (Scheindlin, J.). Furthermore, the doctrine of "[j]udicial estoppel 'prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding.'" *Mitchell v. Washingtonville Cen. School Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) (internal citations omitted). In the Second Circuit, a litigant who asserts judicial estoppel must show that "(1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) [that] position was adopted by the first court in some manner." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y.), *opinion supplemented on reconsideration*, 399 F. Supp. 2d 261 (S.D.N.Y. 2005) (Scheindlin, J.) (internal citation omitted).

In *BOKF*, CEC made statements and took factual positions in Court filings that the Guarantee was released as a result of the August Transaction and this Court granted the relief sought by CEC – denial of BOKF's motion for summary judgment. These positions are in direct conflict with positions CEC takes in this action. For example, David Sambur, CEC's board member and CEC's Rule 30(b)(6) corporate representative, stated in his July 24, 2015 declaration in opposition to BOKF's motion for partial summary judgment filed in this Court that based on personal knowledge and CEC business records, that "*[u]nder the [August Transaction]*, the Participating Noteholders consented to amendments to the indentures governing the 2016 and 2017 Notes by, among other things, *removing CEC's guarantee on the 2016 and 2017 Notes*." [7] SMF ¶ 77-82. CEC took a similar position in opposition to BOKF's

---

[7] Indeed, the First Supplemental Indenture resulted from the majority's consent "to the changes and eliminations effected thereby. Thus the Guarantee's release was "effected" as a result of, and not prior to, the August Transaction. SMF ¶ 47.

motion for partial summary judgment, stating that "*[u]nder the [August] transaction*, the Participating Noteholders…consented to amendments to the indentures governing the 2016 and 2017 Notes *to remove CEC's guarantee on the 2016 and 2017 Notes*." SMF ¶ 77. Sambur stated that "*[t]he 2016 and 2017 Notes were the last outstanding 'Existing Notes' defined in the [BOKF and UMB] Indentures, as CEC's guarantee of the other 'Existing Notes' had already been discharged or released*." SMF ¶ 78; *see also* SMF ¶ 80.[8]

CEC also made similar statements in its original proposed "Reply Brief in Support of [CEC's] Petition for Permission to Appeal…," filed in the Second Circuit on October 1, 2015. SMF ¶¶ 73-75. CEC did not mince words in its original Second Circuit filing: the Guarantee was released by the August Transaction and not before.

Although CEC has sought to amend its Reply Brief in the Second Circuit (for the reasons articulated in its Revised Rule 1292 reply brief), it does not and cannot change CEC and Mr. Sambur's prior statements to this Court in opposition to a motion in which CEC ended up receiving the relief from the Court it requested. Thus, there is no question that CEC "took an inconsistent position in a prior proceeding," namely the BOKF proceeding, which is a related action, and that this Court granted the relief sought by CEC – namely the denial of BOKF's summary judgment motion. Thus, these binding positions confirm that the Guarantee was released by the August Transaction and not before. Any position taken by CEC to the contrary should be estopped. *See In re IPO Sec. Litig.*, 383 F. Supp. 2d at 574 (plaintiffs were judicially estopped from taking a position contrary to one they took in an earlier motion for leave to amend, and were bound by their previous assertion) (Scheindlin, J.).

---

[8] ███████████████████████████████████████████████████████████

███████████████████████████████████████ SMF ¶ 81.

**III. THIS COURT SHOULD DECLARE THAT THE FIRST SUPPLEMENTAL INDENTURE IS INEFFECTIVE, INVALID AND VOID, AND THAT THE 2016 NOTES INDENTURE, AS IT EXISTED BEFORE THE FIRST SUPPLEMENTAL INDENTURE, IS IN FULL FORCE AND EFFECT BECAUSE THE FIRST SUPPLEMENTAL INDENTURE VIOLATED SECTION 316(B) OF THE TIA AND SECTIONS 508 AND 905 OF THE 2016 NOTES INDENTURE.**

If the Court agrees with Plaintiff's arguments as set forth above, the Court necessarily will have found that the First Supplemental Indenture violated the 2016 Notes Indenture or the TIA. That finding would entitle Plaintiff to summary judgment on Count I, which seeks a declaratory judgment that the First Supplemental Indenture is ineffective. In the *BOKF* action, the Court wrote that if, in releasing its guarantee of CEOC notes, "CEC violated noteholders' rights to payment under section 316(b) [of the TIA], then the release was invalid as a matter of law." *BOKF*, at \*7.

Section 2201 of the Declaratory Judgment Act provides that "[i]n a case of an "actual controversy" within its jurisdiction, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201(a). In the Second Circuit, an "actual controversy" is one that is "'real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir.2001) (quotations omitted). "The Second Circuit has routinely held that in order to decide whether to entertain an action for declaratory judgment, a District Court must ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Kramer v. Lockwood Pension Servs.*, 653 F. Supp.2d 354, 375–76 (S.D.N.Y. 2009) (citing *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)) (quotation marks omitted).

13

There can be no dispute that the parties are engaged in an actual controversy – this action has been litigated for over a year and there are three related-actions. In this action, Plaintiff seeks a declaration of his and other bondholders' rights under a potentially amended contract (the 2016 Notes Indenture), making this an "appropriate circumstance for declaratory judgment." *Penn Mut. Life Ins. Co. v. Wolk*, 739 F. Supp. 2d 387, 394 (S.D.N.Y. 2010) (Scheindlin, J.) (finding declaratory judgment claims proper, including declaration of rights under an insurance contract). Plaintiff has demonstrated his rights arising from the 2016 Notes Indenture and the TIA were violated by the consummation of the August Transaction and execution of the First Supplemental Indenture. CEC justifies its failure to satisfy its guarantor obligations to Plaintiff, which were triggered by CEOC's bankruptcy filing, on the validity of this removal. SMF ¶ 66-68, 74-77. This Court has recognized that "[h]ad the [Guarantee] not been improperly removed, CEOC's filing would have had no impact on CEC's liability under the Guarantee[]." *MeehanCombs*, 80 F. Supp. 3d at 516. Therefore, this Court's declaration that the First Supplemental Indenture is ineffective would "settle the legal controversy at issue and finalize the controversy and offer relief from uncertainty. *Kramer*, 653 F. Supp. 2d at 375–76; *Penn Mut. Life Ins.*, 739 F. Supp. 2d at 392. Because the undisputed facts show that CEC's removal of its Guarantee violated the 2016 Notes Indenture or the TIA, Plaintiff is entitled to a declaratory judgment that the First Supplemental Indenture is ineffective and that the 2016 Notes Indenture and the Guarantee continues in full force.

**IV. THE UNDISPUTED FACTS ESTABLISH THAT DANNER IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VI FOR BREACH OF CONTRACT UNDER SECTION 501(5) AND 502 OF THE 2016 NOTES INDENTURE SINCE CEOC FILED A VOLUNTARY PETITION FOR RELIEF UNDER THE BANKRUPTCY CODE**

"In January 2015, CEOC … filed voluntary petitions under chapter 11 of the Bankruptcy Code." SMF ¶¶ 63-64. The 2016 Notes Indenture provided that the voluntary bankruptcy filing

14

of CEOC was an immediate Event of Default, and as a result, CEOC's and CEC's obligations under the 2016 Notes became due and owing. *See* 2016 Notes Indenture, §§ 501(5)(a) and 502. SMF ¶¶ 66, 67. Indeed, CEC has admitted in its public filings that CEOC's bankruptcy petition constituted an Event of Default that accelerated CEOC's obligations under the 2016 Notes Indenture, and that the 2016 Notes Indenture provides "that as a result of the Bankruptcy Petitions the principal and interest due thereunder shall be immediately due and payable." SMF ¶ 68; Novod Decl. Ex. L (CEC Form 8-K filed Jan. 15, 2015). Thus, it indisputable that upon this Event of Default, CEC's failure to pay constitutes a breach of contract under the 2016 Notes Indenture. Consequently, Danner is entitled to summary judgment on Count VI.

## CONCLUSION

The undisputed facts establish that the August Transaction and the First Supplemental Indenture, which released CEC's Guarantee of the 2016 Notes, impaired Plaintiff's ability to recover principal and interest owed on his 2016 Notes and his ability to commence an action for the enforcement of any such payment. Accordingly, CEC has violated the TIA and breached Sections 508 and 905 of the 2016 Notes Indenture. As a result, Plaintiff is entitled to the declaratory relief requested in the Amended Complaint that, as a result of CEOC's voluntary bankruptcy filing, CEC has breached Sections 501(5)(a) and 502 of the 2016 Notes Indenture.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order granting Plaintiff summary judgment on Counts I, II, III, and VI of the Amended Complaint against CEC and award such other and further relief in Plaintiff's favor as the Court deems appropriate.

Dated:  October 23, 2015

| **GARDY & NOTIS, LLP** | **GRANT & EISENHOFER P.A.** |
|---|---|
| | By: */s/ Gordon Z. Novod*_____ |
| Mark C. Gardy | Jay W. Eisenhofer |
| James S. Notis | Daniel L. Berger |
| Meagan Farmer | Gordon Z. Novod |
| Tower 56 | Brenda Szydlo |
| 126 East 56th Street, 8th Floor | 485 Lexington Avenue, 29th Floor |
| New York, New York 10022 | New York, New York 10017 |
| Tel:  212-905-0509 | Tel:  646-722-8500 |
| Fax:  212-905-0508 | Fax:  646-722-8501 |

*Attorneys for Plaintiff and the Proposed Class*

16