**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FREDERICK BARTON DANNER, Individually and On Behalf of All Others Similarly Situated, | No. 1:14-cv-7973-SAS |
| Plaintiff, | |
| v. | ECF Case |
| CAESARS ENTERTAINMENT CORPORATION and CAESARS ENTERTAINMENT OPERATING COMPANY, INC., | |
| Defendants. | |

## DEFENDANT CAESARS ENTERTAINMENT CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 492-0020

FRIEDMAN KAPLAN
SEILER & ADELMAN LLP
7 Times Square
New York, New York 10036-6516
Telephone: (212) 833-1100
Fax: (212) 833-1250

*Attorneys for Defendant Caesars Entertainment Corporation*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

   Background .......................................................................................................................... 3

   The *MeehanCombs* Action ................................................................................................ 4

   The *Danner* Action ........................................................................................................... 4

   Relevant Proceedings ........................................................................................................ 5

   Danner's Motion for Class Certification ......................................................................... 5

   The Record is Devoid of Evidence Supporting the Existence of the Putative Class ................. 6

ARGUMENT ...................................................................................................................... 8

   I.   DANNER HAS NOT SATISIFIED EITHER REQUIREMENT OF
       RULE 23(B)(3) ......................................................................................................... 9

     A.  Danner Has Not Proven That Class Litigation Is Superior ........................................ 9

     B.  Danner Has Not Proven That Common Issues Predominate Within
        the Class ........................................................................................................... 12

   II.  DANNER ALSO FAILS TO SATISFY THE NUMEROSITY, ADEQUACY
       AND ASCERTAINABILITY REQUIREMENTS OF RULE 23(a) ........................... 13

     A.  Danner Has Not Proven That the Putative Class Is Numerous ................................. 13

     B.  Danner Has Not Proven That He Is an Adequate Class Representative ................... 18

     C.  Danner Has Not Proven That the Putative Class Is Ascertainable ........................... 20

CONCLUSION ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*,
    269 F.R.D. 252 (S.D.N.Y. 2010) ............................................................................11

*Amchem Products, Inc.* v. *Windsor*,
    117 S. Ct. 2231 (1997) ....................................................................................11, 12

*Ansari* v. *N.Y.U.*,
    179 F.R.D. 112 (S.D.N.Y. 1998) ..........................................................................12

*Bakalar* v. *Vavra*,
    237 F.R.D. 59 (S.D.N.Y. 2006) ..............................................................................8

*Beck* v. *Status Game Corp.*,
    No. 89-CV- 2923(DNE), 1995 WL 422067 (S.D.N.Y. July 14, 1995) ..................18

*Block* v. *First Blood Assocs.*,
    125 F.R.D. 39 (S.D.N.Y. 1989) ............................................................................13

*Board of Trustees of S. Cal. IBEW-NECA Defined Contrib. Plan* v. *Bank of N.Y.*
    *Mellon Corp.*,
    287 F.R.D. 216 (S.D.N.Y. 2012) ......................................................................8, 10

*Brecher* v. *Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)......................................................................................20

*Califano v. Yamaski*,
    442 U.S. 682 (1979)..................................................................................................7

*Comcast Corp.* v. *Behrend*,
    133 S. Ct. 1426 (2013)..............................................................................................7

*Crown EMAK* v. *Kurz*,
    992 A.2d 377 (Del. 2010) ......................................................................................16

*Edge* v. *C. Tech Collections, Inc.*,
    203 F.R.D. 85 (E.D.N.Y. 2001)............................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006), 483 F.3d 70 (2d Cir. 2007)....................................8, 21

*Jeffries* v. *Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of*
    *the Elec. Indus.*,
    172 F. Supp. 2d 389 (S.D.N.Y. 2001).....................................................................13

*Johnson v. Nextel Comm'ns*,
   780 F.3d 128 (2d Cir. 2015)................................................................12

*Kapiti* v. *Kelly*,
   No. 07-CV- 3782(RMB)(KNF), 2008 WL 3874310 (S.D.N.Y. Aug. 18, 2008)...............13, 17

*Koenig* v. *Benson*,
   117 F.R.D. 330 (E.D.N.Y 1987) ..........................................................19

*Kottler* v. *Deutsche Bank AG*,
   05-CV-7773(PAC), 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010) .....................................11

*LeGrand* v. *N.Y.C. Transit Auth.*,
   No. 95–CV–0333(JG), 1999 WL 342286 (E.D.N.Y. May 26, 1999)..............................13

*MeehanCombs Global Credit Opportunities Funds, LP v. CEC*,
   80 F. Supp. 3d 507 (S.D.N.Y. 2015)........................................................6

*MeehanCombs v. Global Credit Opportunities Master Fund LP v. CEC*,
   14-cv-7091(SAS), 2015 WL 9478240 (S.D.N.Y. Dec. 29, 2015)........................................3, 4

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002) (Scheindlin, J.)...................................................10

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ..........................................................19

*Parker* v. *Time Warner Entm't Co.*,
   331 F.3d 13 (2d Cir. 2003)...................................................................8

*Pecere* v. *Empire Blue Cross & Blue Shield*,
   194 F.R.D. 66 (E.D.N.Y. 2000) ..........................................................17

*Primavera Familienstiftung* v. *Askin Cap. Mgmt.*,
   178 F.R.D. 405 (S.D.N.Y. 1998) ..........................................................11

*Reese* v. *Arrow Fin. Servs., LLC*,
   202 F.R.D. 83 (D. Conn. 2001)...........................................................18

*Scott* v. *N.Y.C. Dist. Council of Carpenters Pension Plan*,
   224 F.R.D. 353 (S.D.N.Y. 2004) ..........................................................22

*Shaylar* v. *Midtown Investigs., Ltd.*,
   No. 12-CV-4685(KBF), 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ...............................8

*Steinmetz* v. *Bache & Co.*,
   71 F.R.D. 202 (S.D.N.Y. 1976) ..........................................................10

*Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)................................................................8, 17

*Weiner* v. *Snapple Beverage Corp.*,
    07-CV- 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)........................................20

**Other Authorities**

Fed. R. Civ. P. 23(b)(3)(B) ................................................................12

McLaughlin on Class Actions § 5:63 (12th ed. 2015) ................................................................9

Rule 23(a)................................................................*passim*

Rule 23(a)(1)................................................................9, 16

Rule 23(a)(2)................................................................15

Rule 23(a)(4)................................................................9

Rule 23(b)(2)................................................................8

Rule 23(b)(3)................................................................*passim*

Caesars Entertainment Corporation ("CEC") respectfully submits this memorandum of law in opposition to the motion for class certification by plaintiff Frederick Barton Danner ("Danner").

## PRELIMINARY STATEMENT

The Court should certify a class only if it finds – after conducting what the Supreme Court has repeatedly described as a "rigorous analysis" – that a plaintiff has presented proof that establishes each element of Rule 23 of the Federal Rules of Civil Procedure. But Danner's motion points to no evidence that might satisfy the requirements of Rule 23(a) and Rule 23(b)(3), much less evidence that satisfies a "rigorous analysis." Accordingly, the motion should be denied.[1]

*First*, Danner fails to prove why class certification here is "superior" to all other means of prosecuting the claims, as he must under Rule 23(b)(3). Danner commenced his action on October 2, 2014, a month after the filing of an action brought by individual holders of the same notes in *MeehanCombs Global Credit Opportunities Master Fund, L.P., et al.* v. *CEC, et al.*, 14-CV-7091. Like Danner, the *MeehanCombs* plaintiffs seek to recover from CEC the principal and outstanding interest on their holdings of the 6.50% senior unsecured notes due 2016 (the "Notes") issued by CEC's subsidiary Caesars Entertainment Operating Company, Inc. ("CEOC") pursuant to an indenture dated June 9, 2006 (the "Indenture"). Had they not commenced their own action, the *MeehanCombs* plaintiffs could be substantial members of Danner's putative class, but as it stands, Danner's moving papers propose a new class definition

---

[1] Danner's memorandum of law in support of his motion is referred to herein as "Danner Br."; his attorney's supporting declaration is referred to herein as "Novod Decl."; and his initial and amended complaints are referred to herein as "Compl." and "Am. Compl.," respectively.

Certain materials to which CEC refers herein are attached to the January 11, 2016 declaration of Christopher M. Colorado ("Colorado Decl.").

that excludes the *MeehanCombs* plaintiffs – and they have in any event told the Court that they would opt out of Danner's proposed class even if that were not the case. (*Id.*) This history illustrates why class certification is unnecessary: The proposed class, as the *MeehanCombs* action confirms, includes entities with adequate resources and incentives to seek to assert claims of their own.

*Second*, Danner fails to prove that common issues would "predominate" within the putative class, as Rule 23(b)(3) requires. A class action will not resolve affirmative and equitable defenses that may be unique to class members or individualized determinations of damages (if any) among the putative class.

*Third*, Danner fails to prove that the putative class is "numerous," as Rule 23(a) requires. Danner's putative class includes only persons or entities that have held Notes *continuously* from January 15, 2015 through the date any class is certified. He has offered nothing more than speculation that anyone other than himself meets this definition. Moreover, there is evidence that the Notes continue to be traded, and as a result, the Notes that have not been held continuously must be excluded.

*Fourth*, as demonstrated by Danner's deposition testimony, he fails to meet the adequacy requirements of Rule 23(a) because he has merely lent his name to this action, which has been (and would continue to be) controlled entirely by class counsel.

*Fifth*, Danner fails to explain how the putative class is "ascertainable," as Rule 23(a) requires. Danner has not demonstrated an ability to trace the beneficial ownership of the Notes to exclude all holders of Notes who have traded during the proposed class period and who are therefore excluded from the class. Accordingly, he is unable to inform the Court of who will – and who will not – be bound by any judgment.

<u>**STATEMENT OF FACTS**</u>

<u>**Background**</u>

In 2006, CEOC issued $750 million of the Notes.  *See MeehanCombs Global Credit Opportunities Master Fund LP v. CEC*, 14-cv-7091(SAS), 2015 WL 9478240, at *1 (S.D.N.Y. Dec. 29, 2015).  CEC's guarantee of the Notes was embodied in the Indenture, which also provided for the release of the guarantee if, among other things, CEOC "cease[d] . . . to be a wholly owned subsidiary of CEC."  *Id.* at *1-2, *6, *9.  In May 2014, CEC sold 5% of CEOC stock to institutional investors and "issued a press release stating that because CEOC was no longer a 'wholly owned subsidiary' of CEC, CEC's guarantee obligations had been terminated under CEOC's bond indentures."  *Id.* at *2.  Later that month, CEOC distributed an additional 6% of its shares to employees as part of a performance incentive plan (the "PIP").  Following the PIP transaction, CEC owned only 89% of CEOC's shares and it again stated publicly that "its guarantee obligations for CEOC's bonds had been terminated."  *Id.* at *2, *9.

In August 2014, CEC and CEOC completed a transaction (the "August Transaction") with four entities that held $130.2 million principal amount of the Notes (the "Majority Holders"), which represented a majority of the Notes then outstanding and not held by CEC or its affiliates.  (Colorado Decl. Ex. A, Sch. B.)  CEC and CEOC acquired from the Majority Holders, *inter alia*, $89.4 million in principal amount of the Notes, which were then cancelled.  (*Id.*)  At the close of the transaction, the Majority Holders exchanged $40.8 in principal amount of Notes that they held for an equal amount of amended Notes.  (*Id.*)

As part of the August Transaction, the Majority Holders consented to a supplement to the Indenture that removed from the Indenture all provisions related to CEC's guarantee.  2015 WL 9478240 at *2, *9.  CEC stated publicly that the August Transaction reaffirmed the release of the guarantee following the May 2014 transactions.  *Id.* at *2.

Danner asserts that, following the August Transaction, $159.3 million principal amount of Notes remained outstanding that was not held by CEC or its affiliates. (Am. Compl. ¶ 67; Danner Br. at 5 & n.25.)  This number includes $40.8 million principal amount of amended Notes held by the Majority Holders after the August Transaction closed. (Danner Br. at 5 & n.25.)

## The *MeehanCombs* Action

The *MeehanCombs* plaintiffs commenced their action on September 3, 2014 over Notes that they held, as well as other senior unsecured notes issued by CEOC.  Following the voluntary dismissal of two of the original plaintiffs, the remaining plaintiffs' claims now concern only $19.6 million in principal amount of Notes that they claim to hold.  (Plaintiffs' Local Rule 56.1 Statement in Support of Motion for Partial Summary Judgment (Oct. 23, 2015) ¶¶ 1-3 (Dkt. No. 68).)

## The *Danner* Action

Danner's complaint – filed by two plaintiffs' class action law firms – asserted claims on behalf of a putative class of "all persons who beneficially held the [Notes] during the period August 11, 2014 to the present," with certain exclusions.  (Compl. ¶ 51 (Dkt. No. 1).) The complaint asserted claims under the Trust Indenture Act (the "TIA) and common law claims and sought recovery from CEC on behalf of Danner and his proposed class.  (*Id.* ¶¶ 58-93.) Danner filed an amended complaint on February 19, 2015.  He did not change his proposed class definition.  (Am. Compl. ¶ 66 (Dkt. No. 28).)

Danner testified that ████████████████████████████████████████
████████████████.  He testified that ████████████████████████████████
████████████.  (Colorado Decl. Ex. B at 55:12-56:9, 81:24-82:8.)  As to the class he hopes to represent, Danner alleged that he did not know who was in it or how numerous it was, and that

these facts could be ascertained only through discovery.  (Compl. ¶ 52; Am. Compl. ¶ 67.)  But as Danner's motion confirms, he did no such thing.

**Relevant Proceedings**

The Court coordinated fact discovery in this action with *MeehanCombs* and other actions before it against CEC.  (Am. Stip. and Protective Order (July 22, 2015) (Dkt. No. 42); Am. Scheduling Order (June 2, 2015) (Dkt. No. 39).)  Danner served his first document request in early March 2015, shortly after CEC answered his amended complaint.  Coordinated fact discovery ended in September 2015, with over 190,000 documents produced and over 30 depositions taken; discovery was produced by 32 nonparties.  Danner claims to have completed class discovery.  (Colorado Decl. Ex. C at 2.)  But Danner is unable, based on discovery or otherwise, to identify any class member whom he proposes to represent (other than himself or holders that would opt out or be excluded, like the *MeehanCombs* plaintiffs).  (*Id.* Ex. B at 47:16-47:20.)  Danner has identified *no one else* who has held Notes continuously from January 15, 2015 to date.

**Danner's Motion for Class Certification**

By letter dated September 28, 2015, Danner requested a pre-motion conference before the Court on a proposed motion to certify the class described in his pleadings, "pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2)."  (Colorado Decl. Ex. C at 1.)  Notwithstanding concerns expressed by the Court at the Conference about the merits of such a motion, Danner nonetheless proceeded.

In the month between the filing of his pre-motion letter and his moving papers, Danner narrowed his proposed class definition.  He no longer seeks to represent the class described in his complaints or pre-motion letter, consisting of "all persons who beneficially held

the [Notes] during the period August 11, 2014 . . . to the present" – *i.e.*, for any length of time in that period (*e.g.*, Colorado Decl. Ex. C at 1).  Instead, he proposes to represent "all persons who beneficially held the [Notes] *continuously*" from January 15, 2015 through the date the Court certifies a class.  (Danner Br. at 1-2 (emphasis added).)  Put differently, Danner now excludes from his proposed class holders of any Notes acquired at any point between January 15, 2015 and the date the Court certifies a class.  Also excluded from the proposed class are (a) CEC and its affiliates and employees, (b) the Majority Holders, and (c) the *MeehanCombs* plaintiffs.  (*See id.* at 1-2.)

Danner also abandoned his effort to certify a class under Rule 23(b)(2) as described in his pre-motion letter.  Instead, his papers seek certification pursuant to Rule 23(b)(3).  (*Id.* at 1, 2 n.7.)

**The Record is Devoid of Evidence Supporting the Existence of the Putative Class**

Danner presents no facts concerning the number of members of his proposed class, even under the narrower definition he now proposes.  Having alleged that this was information that could only be ascertained in discovery, his papers confirm that he has in fact failed to obtain it.  At Danner's deposition, shortly before fact discovery closed, he ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████  (Colorado Decl. Ex. B at 47:16-48:2, 51:16-23.)

These defects are glaring.  There is no evidence in the record suggesting that Danner can satisfy the ascertainability and/or numerosity requirements of Rule 23(a), particularly with respect to holders who acquired their Notes after January 15, 2015.  By Danner's own proposed class definition, the holders of those Notes must be excluded, but he has nothing to say

about the size of this exclusion, other than to admit that it may be significant; indeed, in his pleadings, Danner himself states that the Notes are "actively traded." (Compl. ¶ 52; Am. Compl. ¶ 67.) The active trading is corroborated by Cornerstone Research, which found that at least $60 million in principal amount of the Notes were traded in the secondary market between January 15, 2015 and December 31, 2015 – a figure that likely understates the volume of trading because it does not capture the full volume of trades exceeding $1 million. (Colorado Decl. Ex. D ¶ 4, Ex. A thereto.) The active trading is also corroborated by disclosures made in CEOC's bankruptcy proceeding by an *ad hoc* group that holds Notes (as well as other senior unsecured notes issued by CEOC). These disclosures show that, over the course of a few months within Danner's proposed class period, the members of the *ad hoc* group (merely seven institutions and one individual) traded more than $9 million in principal amount of the Notes. (Colorado Decl. Exs. E - I.)

In sum, it appears that tens of millions of dollars (or more) of Notes have traded in the secondary market since January 15, 2015 – all of which would have to be excluded from Danner's class along with the the over $19.6 million in Notes that the current *MeehanCombs* plaintiffs claim to hold. *See supra* p. 5. In the face of these enormous exclusions, Danner presents *no* proof that his proposed class includes anyone (other than himself) who has held Notes continuously since January 15, 2015.

## ARGUMENT

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426, 1432 (2013) (*quoting Califano* v. *Yamaski*, 442 U.S. 682, 700-01 (1979)). Before certifying a proposed class, a district court must conduct a "rigorous analysis," *id.*, including by receipt of "evidence, by affidavit, documents, or testimony[,] to be satisfied that each Rule 23

requirement has been met," *Board of Trustees of S. Cal. IBEW-NECA Defined Contrib. Plan* v. *Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 223 (S.D.N.Y. 2012). "[S]uch determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established . . . ." *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), *clarified on denial of reh'g on other grounds*, 483 F.3d 70, 73 (2d Cir. 2007). The Second Circuit has made clear that the requirements of Rule 23 cannot be established "based on assumptions," *Parker* v. *Time Warner Entm't Co.*, 331 F.3d 13, 21 (2d Cir. 2003), but must be based on plaintiff's proof by a "preponderance of the evidence," *Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). *See also Shaylar* v. *Midtown Investigs., Ltd.*, No. 12-CV-4685(KBF), 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) ("That standard requires more than a mere possibility—it requires that a fact be shown to be more likely true than not.").

Danner must demonstrate facts sufficient to satisfy the requirements of both Rule 23(b)(3) and Rule 23(a). *See Bakalar* v. *Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (class must be "precise, objective and presently ascertainable"). As explained further below, he has failed to do so.

***Superiority.*** Under Rule 23(b)(3), Danner must show that proceeding by class litigation is "superior" to any other method of adjudicating the issues in controversy. Proceeding by class litigation, however, is not superior here. Courts regularly reject class certification where – as the *MeehanCombs* action confirms – putative class members include sophisticated entities that can seek to assert their own claims.

***Predominance.***  Under Rule 23(b)(3), Danner must show that common questions of law or fact raised by the putative class "predominate" over questions affecting individual members, but he has failed to do so.  A class action will not resolve issues specific to each class member concerning (for instance) affirmative defenses and damages (if any).

***Numerosity.***  Under Rule 23(a)(1), Danner must show that the size of the putative class is sufficiently "numerous."  Danner points to two documents that offer no insight into the number of putative class members.  To the extent these documents are probative, they show that the class does *not* meet the numerosity requirement.

***Adequacy of the Proposed Class Representative.***  Under Rule 23(a)(4), Danner must show that he is an adequate representative to protect the interests of the class.  Yet he lacks even a basic understanding of the claims his counsel seeks to prosecute.

***Ascertainability.***  Under Rule 23(a), Danner must also show that members of the putative class can be ascertained, but here too, he has failed to meet his burden to show that he has any way to actually identify the members of his proposed class.

## I.  DANNER HAS NOT SATISFIED EITHER REQUIREMENT OF RULE 23(B)(3)

### A.  Danner Has Not Proven That Class Litigation Is Superior

Danner must establish "that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added); *see also* McLaughlin on Class Actions § 5:63 (12th ed. 2015) ("In deciding whether to certify the class, a primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handling the controversy.") (citation omitted).  Danner does not establish that class certification is necessary, much less that it is "superior."

Because it is a departure from typical procedure, the class action mechanism should be used only where the standard approach is inadequate. *Cf.* Fed. R. Civ. P. 23, Advisory Committee Notes to the 1966 Amendment, subdivision (b)(3). One factor in assessing the "superiority" of class litigation is whether putative class members have already brought their own claims. *See* Fed. R. Civ. P. 23(b)(3)(B). The factor cuts against certification where, as here, plaintiffs who might otherwise by members of a putative class have already asserted their own claims.

Courts routinely find that class litigation is not "superior" when potential class members have rejected the class mechanism and filed their own actions. *See, e.g.*, *Bd. of Trustees*, 287 F.R.D. at 230 (denying certification where multiple ERISA plans alleged to have suffered injury had already brought claims against defendant); *Steinmetz* v. *Bache & Co.*, 71 F.R.D. 202, 205-206 (S.D.N.Y. 1976) (denying class certification where multiple individual bondholders had already brought actions against defendant); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 209 F.R.D. 323, 350-51 (S.D.N.Y. 2002) (Scheindlin, J.) (denying class certification where record supported conclusion that individual members of putative class had already brought, and others could bring, their own actions).

Other factors support the conclusion that class litigation here is not "superior." "Superiority" is absent where a court concludes that members of a putative class are capable of bringing their own claims or have an interest in controlling their own claims, particularly where their claims are sizeable. This is because "[t]he policy at the very core of the class action mechanism" is that plaintiffs may be unwilling or unable to litigate their claims if they are seeking only "small recoveries," *Amchem Prods., Inc.* v. *Windsor*, 117 S. Ct. 2231, 2246 (1997), and this policy "of protection for weaker plaintiffs" cannot be invoked where substantial

recoveries are available.  *See Primavera Familienstiftung* v. *Askin Cap. Mgmt.*, 178 F.R.D. 405, 411 (S.D.N.Y. 1998).  Using this same rationale, courts have also rejected class litigation where the putative class consists of sophisticated or financially capable entities.  *See Bd. of Trustees*, 287 F.R.D. at 229-30; *Kottler* v. *Deutsche Bank AG*, 05-CV-7773(PAC), 2010 WL 1221809, at *5 (S.D.N.Y. Mar. 29, 2010); *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 269 F.R.D. 252 (S.D.N.Y. 2010) (Scheindlin, J.) ("Plaintiffs also fail to demonstrate that the proposed class members lack the financial resources to join plaintiffs' lawsuit or that they are otherwise incapable of bringing individual lawsuits"), *aff'd in relevant part sub nom. Penn. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d 111, 119-21 (2d Cir. 2014).  These factors – the size of any potential recoveries and the sophistication of class members – also weigh against class certification here.

Danner cannot demonstrate that the recovery sought by any particular class member is *de minimis.*  To the contrary, his damages theory is that ████████████ ████████████████████████████████████████████████████████ ██████████████████████.  (Colorado Decl. Ex. J (Plaintiff's Expert Damages Rep. of Prof. I. Shaked (Dec. 18, 2015).)  Danner's assertion that "the holders of [Notes] are likely owed a relatively modest amount" (Danner Br. at 18) is unsupported by the opinion of his own expert.  Moreover, Danner does not know who the members of the putative class are, or the size of their holdings.  *See supra* pp. 6-7.  In other words, Danner's argument is no more than speculation – the size of the potential recovery of any member of his putative class seems to be unknowable.  In any event, a class action may not be superior even where a potential recovery is "modest" (as opposed to *de minimis*).  *See, e.g., Ansari* v. *N.Y.U.*, 179 F.R.D. 112, 115-16 (S.D.N.Y. 1998).

As to the sophistication of those who own Notes, according to the scant documentation Danner has presented, beneficial holders of Notes include ███████████ ███████████████████████████████████████████████████████████████ ██████████. (Danner Br. at 9-10 n.35; Novod Decl. Ex. D.)  Some of them also seem to ██████ ██████████ (Danner Br. at 10 & n.38), which would further undermine the claim of superiority, because the preclusive effect of a class action would be in doubt, *see Ansari*, 179 F.R.D. at 116-17.

B.    Danner Has Not Proven That Common Issues Predominate Within the Class

The predominance requirement of Rule 23(b)(3) factor is "far more demanding" than the requirement under Rule 23(a)(2) that merely some common questions of law and fact exist across a proposed class.  *See Amchem*, 521 U.S. at 623-24.  The common issues that might exist within the putative class concern the guarantee and CEC's release of it – through the August Transaction as well as both of the May 2014 transactions – both as a matter of compliance with the terms of the Indenture and the TIA.  A class action, however, will not resolve individual issues relevant to affirmative defenses and damages, if any.

While courts recognize that individual defenses and individual damages inquiries alone do not "compel a finding that individual issues predominate over common ones," such individual issues are "factors that . . . must [be] consider[ed]  in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *Johnson* v. *Nextel Comm'ns*, 780 F.3d 128, 138-39 (2d Cir. 2015).  Issues such as ownership of the proposed class members' interests in the Notes, CEC's affirmative and equitable defenses to plaintiff's claims, and damages, if any, will be unique to each putative class member.  As a result, individual issues far outweigh any common questions, and the proposed class fails to satisfy the predominance factor under Rule 23(b)(3).

## II.    DANNER ALSO FAILS TO SATISFY THE NUMEROSITY, ADEQUACY AND ASCERTAINABILITY REQUIREMENTS OF RULE 23(a)

### A.    Danner Has Not Proven That the Putative Class Is Numerous

A class may be certified only if, among other things, "the class is so numerous that joinder of all members is impracticable.'" Fed. R. Civ. P. 23(a)(1); *see also Block* v. *First Blood Assocs.*, 125 F.R.D. 39, 42 (S.D.N.Y. 1989). "Although the court may make common sense assumptions to support a finding of numerosity, it cannot do so on the basis of pure speculation without any factual support." *Kapiti* v. *Kelly*, No. 07-CV- 3782(RMB)(KNF), 2008 WL 3874310, at *4 (S.D.N.Y. Aug. 18, 2008) (numerosity lacking where plaintiff "offers no persuasive evidence" of the number of class members).[2]   What constitutes "numerosity" is not tied to any particular number, particularly where the plaintiff fails to demonstrate that joinder is impracticable. *See LeGrand* v. *N.Y.C. Transit Auth.*, No. 95-CV-0333(JG), 1999 WL 342286, at *3-4 (E.D.N.Y. May 26, 1999) (numerosity lacking despite plaintiff's claim that class would comprise at least 100 persons). Where a plaintiff argues that numerosity exists by simply "present[ing] a large pool of persons within which a class may or may not exist, without more the Court may not reason, in good faith, that numerosity has been met." *Kapiti*, 2008 WL 3874310, at *4. Yet this is exactly what Danner does here.

Danner asks the Court to certify a class of beneficial owners who held Notes as of January 15, 2015 and have held them *continuously* through the date of class certification. (Danner Br. at 2 & n.6.) He offers no evidence, however, that any persons other than himself

---

[2] *See also Jeffries* v. *Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus.*, 172 F. Supp. 2d 389, 394 (S.D.N.Y. 2001) (numerosity lacking where plaintiff failed to offer evidence supporting claim that "the number of class members is likely to be in the thousands"); *Edge* v. *C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001) (numerosity lacking where plaintiff offered only speculation that, because defendant was a collection agency, it had "almost certainly" sent out thousands of letters similar to that received by plaintiff).

held Notes continuously through this period, let alone that this group of holders would satisfy the numerosity requirement. At deposition, he ███████████████████████████████ ██████. (Colorado Decl. Ex. B at 47:16-20.) Instead, Danner points to the principal amount of outstanding Notes and asserts that, among the holders of those Notes, a sufficiently numerous class must exist (Danner Br. at 9-10), but the basis for that contention is mere speculation on his part.

Danner's difficulty in satisfying the numerosity requirement begins with his proposed definition of the putative class, which excludes the following holders of the Notes (assuming *arguendo* that the holders of these Notes would not opt out in any event): (a) CEC, its affiliates, and employees – which, according to Danner, comprise $137.5 million in principal amount (Danner Br. at 5 n.25); (b) the Majority Holders (*id.*); (c) holders of Notes acquired between January 15, 2015 and the present (*id.* at 2), which likely amount to tens of millions of dollars, *see supra* pp. 6-7; and (d) the *MeehanCombs* plaintiffs (Danner Br. at 2), who claim to hold $19.6 million in principal amount of the Notes, *see supra* p. 4.

Against all of this, Danner asserts that the Court should find numerosity by joining him in making two significant assumptions. First, he claims that if the Court sets aside the amount of Notes held by CEC affiliates, and the amount of Notes held by the Majority Holders after the August Transaction closed (*see supra* p. 3), what remains outstanding is the $118.5 million in principal amount of Notes – *all of which*, according to Danner, should be deemed to be held by members of the putative class. (Danner Br. at 9.) Second, Danner claims

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. (*Id.* at 5 n.25;

14

9-10 & n.34.)  This inference has no basis in the record and is not even a reasonable

extrapolation – it is speculation.[3]

> For one thing, a substantial portion of the $118.5 million in principal amount of
the Notes identified by Danner have been traded since January 15, 2015 – not "continuously
held" – so they are defined out of the putative class.  As discussed above, *see supra* p. 6, Danner
has alleged that the Notes continue to be actively traded, and this is corroborated by Cornerstone
Research and by the disclosures of the *ad hoc* group in CEOC's bankruptcy proceedings.  Tens
of millions of dollars (or more) of Notes have traded in the secondary market since January 15,
2015, and all of these Notes are excluded from Danner's class.

> Moreover, Danner argues that a 

supports a finding of numerosity (Danner Br. at 9-10 & n.35), but a

is

irrelevant.  It says nothing about who (if anyone besides Danner) has held the Notes continuously

since January 15, 2015 .  Moreover, a comparison of this

, which further corroborates

---

[3] The lack of evidentiary support for Danner's stated basis for finding numerosity is also
illustrated by the fact that, although he substantially narrowed the definition of the proposed
class in his moving papers from what he posited in his pleadings, he asserts *no change* in the
class's holdings of Notes.  Danner's class definition in the complaints included anyone who held
any of the Notes for any length of time between August 11, 2014 and the present.  His motion
papers have a later starting date for the class (January 15, 2015) and also add a continuous
holding requirement.  But in his amended complaint, Danner indicated that CEC owed
unaffiliated holders of the Notes $159.3 million (Am. Compl. ¶ 67) – a number that he has not
changed.  It is simply the sum of the $118.5 million in Notes which Danner still claims is owned
by class members and the $40.8 million of amended Notes the Majority Holders continued to
hold at the closing of the August Transaction (which are excluded by the class definition).
According to Danner, the newly defined class is owed the same amount as his previously defined
class.  The implication of Danner's argument is that no one sold Notes between August 11, 2014
and January 15, 2015, but the evidence is to the contrary.  *See infra* n.4.

that the Notes have been actively traded during the putative class period.  (*Compare* Novod Decl.

Ex. D *with* Colorado Decl. Ex. K.)[4]

  The other "evidence" of numerosity offered by Danner – a document produced by

the Depository Trust Company ("DTC") – is also not probative of who, if anyone, held Notes

continuously during the proposed class period.  The DTC document purports to be ███████████

████████████████████████████████████████████████████████████

(Novod Decl. Ex. C.)  A ████████████████████████████████ does not serve to

identify the person or persons who were beneficial holders of the Notes continuously from

January 15, 2015 through the present.

  Danner asks the Court to "infer" that because certain of the participant names on

the DTC document ████████████████████████████████████████████

████████  (Danner Br. at 10.)  This inference still does not help to identify continuous holders of

the Notes.  The requested inference also contradicts the factual record, ████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████.█

████████████████████████████████████████████████████████

[4] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

[5] Danner cites a single decision in support of the inference he asks the Court to draw from the
DTC document, *Crown EMAK* v. *Kurz*, 992 A.2d 377, 382 (Del. 2010).  But that decision
concerned the role of DTC as the undisputed, sole record holder of more than 7 million shares of
common stock in the plaintiff's affiliate, for the purposes of proxy vote issues.  *Id.* at 382.
*EMAK* does not state, or suggest, that DTC should be deemed to play the same role with respect
to distressed debt, much less as to the unsecured notes of an entity, CEOC, which had filed for
bankruptcy eight months before the DTC report in question.

 For example, the
lead *MeehanCombs* plaintiff ███████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████ Danner's requested inference may
be an invitation to double-count putative class members in order to assist his effort to satisfy the
numerosity requirement.

Finally, Danner's assumptions in service of his numerosity argument improperly
sweep in the *MeehanCombs* plaintiffs, which represent $19.6 million of the claimed $118.5
million in damages.  This is at odds with Danner's latest proposed class definition, which
appears to exclude the *MeehanCombs* plaintiffs (Danner Br. at 2), and even if it does not, the
*MeehanCombs* plaintiffs have indicated that they would opt out.  (Colorado Decl. Ex. M at 3.)

Danner has failed to demonstrate numerosity by a preponderance of the evidence.
The Court should deny class certification on this ground alone.  *See Teamsters*, 546 F.3d 201-02;
*In re IPO*, 471 F.3d at 40; *see also Kapiti*, 2008 WL 3874310, at *4-*5; *Pecere* v. *Empire Blue
Cross & Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (class certification denied where
plaintiff "failed to proffer any evidence to permit a reasonable estimate of the number of persons
who fit within the proposed class").[6]

---

[6] To the extent Danner may argue that it is enough for the number and identity of class members
to be set forth at a later date, courts have repeatedly rejected that position.  *Kapiti*, 2008 WL
3874310, at *5 ("Plaintiff's proposal that '[i]f certification is granted, [p]laintiff will subpoena

B.   <u>Danner Has Not Proven That He Is an Adequate Class Representative</u>

Danner's inadequacy as a representative of the purported class is an additional

basis on which the Court should deny certification.  An adequate class representative under Rule

23(a) must "not simply lend[] his name to a suit controlled entirely by the class attorney," as the

class is "entitled to an adequate representative, one who will check the otherwise unfettered

discretion of counsel in prosecuting the suit."  *Beck* v. *Status Game Corp.*, No. 89-CV-

2923(DNE), 1995 WL 422067, at *4, *6 (S.D.N.Y. July 14, 1995).

Danner's testimony shows that, far from being a "check" on counsel, he has taken

few, if any, actions on behalf of the putative class, and is acting at the behest of counsel.  Danner

testified that ████████████████████████████████████████████

(Colorado Decl. Ex. B at 47:16-48:2.)  Danner's view is that ████████████████████

██████████████████████████████████████████████████████████

██████████████████  (*Id.* at 51:2-15.)  ████████████████████████

████████████████████████████████

Even using his own standard for the class representative's obligations as the

measure, ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████.  (*Id.* at 55:12-56:9, 81:8-18; 81:24-82:8; 82:19-83:9.)  During

the 15 months that this action has been pending, ████████████████████████████

from [d]efendants all CEU case files for the past five years to ascertain class members for notice
and [trial] purposes' demonstrates the speculativeness of how many class members may exist.");
*Reese* v. *Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 91 n.5 (D. Conn. 2001) (plaintiff's proposal to
conduct "additional discovery as to numerosity misconceives the nature of the burden on a
plaintiff moving for class certification: plaintiff must show that the requirements of Rule 23 have
been met before the class can be certified").  The Court should reject such an argument as well.

███████████████████████████████████████████ (*Id.* at 51:16-23, 53:4-10.)

Moreover, even though two law firms have appeared on his behalf, ████████████████

████████████████████████████████████████████ (*Id.* at

107:16-108:3, 109:3-9.)  Last, it is unclear whether Danner comprehends the claims here.  While

he testified that ████████████████████████████ (*id.* at 43:21-44:17), ████████

████████████████████████████████████████████

████████ (*Id.* at 85:20-22, 89:9-90:7, 90:23-91:2.)  Danner's rudimentary understanding of

his claims only compounds his abdication of responsibilities as a potential class representative.

While the law does not require Danner to have a perfect understanding of the

claims being brought and the underlying factual issues, he is required, at minimum, to

understand the basic aspects of the conduct he purports to allege against CEC.  *Koenig* v.

*Benson*, 117 F.R.D. 330, 336-37 (E.D.N.Y 1987).  He must also take an active role in

representing the class.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 136

(S.D.N.Y. 2008) (finding class representative inadequate where it had no "meaningful

involvement in this case and is simply the willing pawn of counsel").  Danner's deposition

testimony reveals that he neither understands his own claims nor has acted as a "check" on his

counsel in the interests of the putative class.

C.    <u>Danner Has Not Proven That the Putative Class Is Ascertainable</u>

Second Circuit law is well-settled that courts should deny certification if the putative class contains members who cannot be identified.  *See Brecher* v. *Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) ("The touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member") (internal quotation marks omitted).  The Court must be able to determine "who is in the class and, thus, bound by the ruling."  *Weiner* v. *Snapple Beverage Corp.*, 07-CV- 8742(DLC), 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010).  The Second Circuit has warned that where, as here, a putative class consists of beneficial bondholders who seek to prosecute claims tied to bonds traded in a secondary market, "the nature of the beneficial interest itself and the difficulty of establishing a particular interest's provenance" may cause a class to be unascertainable.  *Brecher*, 806 F.3d at 25 (reversing grant of class certification of bondholder class).

Danner has demonstrated, at most, the identity of a portion of holders of Notes at a fixed point in time.  Despite claiming that he would identify members of the class through discovery (Am. Compl. ¶ 67), Danner has not done so.  And he has utterly failed to explain how he might identify which, if any, holders of Notes as of January 15, 2015 continue to hold to the present – that is, Danner has not informed the Court of who might be bound by any judgment.

## CONCLUSION

For the reasons stated above, CEC respectfully requests that the Court deny the

motion for class certification.

Dated: New York, New York
         January 11, 2016

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____
    Lewis R. Clayton
    Michael E. Gertzman
    Jonathan H. Hurwitz
    Ankush Khardori
    1285 Avenue of the Americas
    New York, New York 10019-6064
    (212) 373-3000
    lclayton@paulweiss.com

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

    Eric Seiler
    Philippe Adler
    Jason C. Rubinstein
    Christopher M. Colorado
    7 Times Square
    New York, New York 10036-6516
    (212) 833-1100

*Attorneys for Defendant Caesars Entertainment*
*Corporation*