PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS  
NEW YORK, NEW YORK 10019-6064  
TELEPHONE (212) 373-3000

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A  
NO 7 DONG SANHUAN ZHONGLU  
CHAO YANG DISTRICT  
BEIJING 100020  
PEOPLE'S REPUBLIC OF CHINA  
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING  
3A CHATER ROAD, CENTRAL  
HONG KONG  
TELEPHONE (852) 2846-0300

LEWIS R. CLAYTON

TELEPHONE (212) 373-3215  
FACSIMILE (212) 492-0215  
E-MAIL: lclayton@paulweiss.com

ALDER CASTLE  
10 NOBLE STREET  
LONDON EC2V 7JU, U K  
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING  
2-2 UCHISAIWAICHO 2-CHOME  
CHIYODA-KU, TOKYO 100-0011, JAPAN  
TELEPHONE (81-3) 3597-8101

2001 K STREET, NW  
WASHINGTON, DC 20006-1047  
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200  
POST OFFICE BOX 32  
WILMINGTON, DE 19899-0032  
TELEPHONE (302) 655-4410

January 15, 2016

**By ECF and Hand Delivery**

The Honorable Shira A. Scheindlin  
United States District Judge  
Daniel Patrick Moynihan United States Courthouse  
500 Pearl Street  
New York, NY 10007-1312

> *MeehanCombs Global Credit Opportunities Master Fund, LP, et al.*,
> v. *Caesars Entm't Corp., et al.*, No. 14 Civ. 7091 (SAS)
>
> *Danner* v. *Caesars Entm't Corp., et al.*, No. 14 Civ. 7973 (SAS)
>
> *BOKF, N.A.* v. *Caesars Entm't Corp.*, No. 15 Civ. 1561 (SAS)
>
> *UMB Bank, N.A.* v. *Caesars Entm't Corp.*, No. 15 Civ. 4634 (SAS)

Dear Judge Scheindlin:

      We write on behalf of Caesars Entertainment Corporation ("CEC") in response to the January 13, 2016 letter from the *MeehanCombs* and *Danner* plaintiffs requesting a conference to discuss consolidating their trial with the *BOKF* and *UMB* trial, which they contend would be more efficient than conducting separate trials. CEC respectfully submits that the most efficient course in the present circumstances would be to stay *all four* actions until the Second Circuit issues its ruling in *Marblegate Asset Management, LLC* v. *Education Management Corp.*, Nos. 15-2124 and 15-2141 (2d Cir. filed July 2, 2015). If the actions are not stayed, CEC believes, as it has stated previously, that these four cases should be tried together. But it would be unfair and prejudicial to commence a consolidated trial, as plaintiffs urge, on March 14—now less than two months away. Since these trial dates were set, CEC has been diligently preparing for a trial on March 14 in *BOKF* and *UMB*. A trial of these four actions together (one of them a putative class action) would increase the number of claims, legal and factual issues, exhibits, and witnesses. Such an expansion of the trial at this late date would be prejudicial to CEC. Accordingly, any consolidated trial should commence on May 9, when the *MeehanCombs/Danner* trial is now scheduled to begin, or in any event no earlier than April 25.

      *First*, these cases should be stayed pending a ruling on the merits by the Second Circuit in *Marblegate*. As the Court has noted, including in its August 27, 2015 Order denying plaintiffs' motions in *BOKF* and *UMB* for partial summary judgment, plaintiffs' claims under the Trust Indenture Act ("TIA") raise unsettled and potentially dispositive issues that neither the Second Circuit nor any other Circuit has addressed and that will significantly affect the evidence, the jury charge, and other critical trial matters. *See UMB*, Dkt. No. 61, at 35. The Court concluded that a ruling by the Circuit on an interlocutory appeal would "enable the parties either to avoid a protracted and most likely exorbitantly expensive trial entirely, or to avoid trying the same claim twice under different standards." *Id.* at 37.

The Honorable Shira A. Scheindlin                                                                                                                 2

    Although the Second Circuit denied CEC's petition for interlocutory appeal, the same considerations support a postponement pending resolution of the *Marblegate* appeal. That appeal poses questions closely related to critical issues here, including whether § 316(b) protects only a holder's legal right to recovery; the appropriate standard for determining what constitutes an impairment; and as of when, and how, the alleged impairment should be evaluated. *See, e.g.*, Brief for Education Management Appellants at 18–29, 53–56, *Marblegate*, Nos. 15-2124 and 15-2141 (2d Cir. Sept. 9, 2015); *cf. UMB*, Dkt No. 61, at 35 (identifying similar unsettled and potentially dispositive issues here). A trial of plaintiffs' TIA claims before receiving clear guidance from the Circuit on these unsettled issues would pose challenging questions about how to instruct the jury and create a significant risk of a retrial if the Circuit, irrespective of how it disposes of the appeal, adopts standards that differ from those this Court uses in its jury charge. *See, e.g., Sass* v. *MTA Bus Co.*, 6 F. Supp. 3d 229, 236-37 (E.D.N.Y.), adhered to on reconsideration on other grounds, 6 F. Supp. 3d 238 (E.D.N.Y. 2014) (granting new trial where subsequent change in law rendered jury instructions improper) (citing, *inter alia*, *Mitsui Sumitomo Ins. Co., Ltd.* v. *Evergreen Marine Corp.*, 621 F.3d 215 (2d Cir. 2010)).

    At the November 10, 2015 conference, the Court recognized the possibility that a ruling by the Second Circuit in the *Marblegate* appeal could affect plaintiffs' TIA claims. (Nov. 10 Tr. at 23-25.) The Court nevertheless reasoned that "[t]here are more claims than just the TIA anyway," and that accordingly "if the TIA claim were to be knocked out by a legal ruling from [the] circuit, if there was a verdict on the non-TIA claims it wouldn't affect it." (*Id.* at 24.) As the plaintiffs' letter acknowledges, and as the Court's recent summary judgment ruling in *BOKF* and *UMB* makes clear, however, the jury will have to address those plaintiffs' TIA claims unless it resolves in their favor both of the different contract issues relating to the May and the August transactions (*i.e.*, the "and"/"or" issue and whether CEOC continued to be "wholly owned" by CEC under the terms of the *MeehanCombs/Danner* indenture). Thus, there is a substantial risk of a retrial following a ruling by the Circuit.

    In our letter dated December 28, 2015 (*BOKF* Dkt. 74), we advised the Court of our intent to seek a stay if the court in the CEOC bankruptcy denies the Debtors' motion for a stay under § 105 of the Bankruptcy Code following the Seventh Circuit's December 23 ruling in *CEOC* v. *BOKF, N.A.*, No. 15-3259, 2015 WL 9311432 (7th Cir. Dec. 23, 2015). Recent developments, however, make it appropriate to seek this relief now. As noted, the Court's recent summary judgment rulings make clear that, regardless of how the *BOKF* and *UMB* plaintiffs' contract claims are resolved, it is more likely that their TIA claims will have to be addressed. It also now appears likely that the bankruptcy court will not be in a position to rule on the Debtors' motion for several weeks, if not longer, given that the Seventh Circuit's mandate has not issued and the *MeehanCombs* plaintiffs (one of the appellees on that appeal) just this week filed a petition for rehearing *en banc* (No. 15-3259, Dkt. 52)—a petition that, under Fed. R. App. Proc. 41(d)(1), further delays issuance of a mandate.

    *Second*, if the Court does not stay these actions, we agree that they should be tried together given the overlap in the factual and legal issues, but such a trial should begin no sooner than April 25. CEC has been preparing for the *BOKF/UMB* trial, which has pretrial deadlines of February 5, 2016 for motions *in limine* and February 29, 2016 for a joint pretrial order. It would be highly prejudicial to add substantially to the number of claims CEC must defend roughly three weeks before motions *in limine* are due, six weeks before the joint pretrial order is due, and

The Honorable Shira A. Scheindlin                                                                                              3

eight weeks before the trial. CEC would, at a minimum, need to carefully consider appropriate adjustments to its pretrial filings based on discovery and legal issues specific to *MeehanCombs* and *Danner*. And CEC would have to expand its trial planning to take account of witnesses, exhibits, and legal and factual issues unique to those cases, including matters relating to the plaintiffs themselves and a purported expert proffered by Danner, and to coordinate with two more sets of plaintiffs. It also appears from a 93-page report from that expert that Danner intends to pursue a far broader case than BOKF and UMB; while the BOKF/UMB expert's report on whether CEC was engaged in a reorganization focuses on transactions in 2014, the Danner report addresses matters going back to the 2006 announcement of CEC's leveraged buyout. Through the same purported expert, Danner has (alone among the plaintiffs) also provided a report on alleged damages, thereby adding to the issues that may have to be addressed at a combined trial. A minimum of six additional weeks beyond the current March 14 trial date would be reasonable to prepare for a trial of these matters.

The scope and timing of a consolidated trial will also be affected by the Court's resolution of Danner's motion for class certification, which will not be fully briefed until February 1, 2016. Danner's motion seeks to certify a class pursuant to Fed. R. Civ. P. 23(b)(3), and although CEC believes that motion should be denied for the reasons explained in its opposition papers, if it is not, then the class must be given an opportunity to opt out before trial. Fed. R. Civ. P. 23(c)(2)(B); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("Rule 23(c)(2) mandates that members of a class certified under Rule 23(b)(3) be afforded an opportunity to 'request exclusion' from that class."). Plaintiffs' proposal would leave very limited time for a notice and opt-out process, and CEC would be required to prepare for a trial covering either eventuality—including preparing to address individualized issues concerning defenses and damages (if any) among class members.

There is no reason to force either the Court or CEC to hastily resolve all of the issues associated with a joint trial of all four actions. As plaintiffs' letter makes clear, they have been aware of CEC's position that a joint trial is appropriate for at least two months (when they opposed it), and they provide no meaningful explanation for the timing of their change in position. The letter refers to the "Existing Notes" provision of the *BOKF/UMB* indentures, but CEC's reliance on this provision as part of its defense in *BOKF* and *UMB* has been apparent since *BOKF* was filed nearly a year ago: The complaint itself pleaded that the release of CEC's guarantee on the notes at issue in *MeehanCombs* and *Danner* under that separate release provision was ineffective for precisely this reason. *BOKF*, Dkt. No. 1, ¶¶ 145-56.

Accordingly, we respectfully submit that all four actions should be stayed pending the resolution of the *Marblegate* appeal. Alternatively, the four actions should be tried together beginning on May 9, 2016 (or no earlier than April 25, 2016), under an appropriate pretrial schedule. Should the Court determine to go forward with the trial on March 14, CEC opposes consolidation. We are available to address any questions about these issues.

                   Respectfully,

                   */s/ Lewis R. Clayton*

                   Lewis R. Clayton

cc:  All Counsel of Record (via ECF)