
**FRIEDMAN** FRIEDMAN KAPLAN
**KAPLAN** SEILER & ADELMAN LLP

PHILIPPE ADLER
padler@fklaw.com
212.833.1119

March 10, 2016

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *MeehanCombs Global Credit Opportunities Master Fund, LP, et al. v. Caesars Entertainment Corporation*, 14-cv-7091

<u>*Danner v. Caesars Entertainment Corporation*, 14-cv-7973</u>

Dear Judge Scheindlin:

      We represent defendant Caesars Entertainment Corporation ("CEC"). CEC seeks a pre-motion conference on a summary judgment motion. As the May 9, 2016 trial date approaches, CEC believes this motion is a proper way to narrow the issues to be tried.

      1.    The Court should dismiss the claim in each case for breach of the implied covenant of good faith and fair dealing (*MeehanCombs* count VII and *Danner* count V). If they concern the termination of the parent guarantee, they are redundant of the many breach of contract claims that are pled. And if the good faith claims concern the so-called "Disputed Transactions," these claims are inconsistent with the indenture governing plaintiffs' notes. With the Court's permission, CEC made a similar summary judgment motion against implied covenant claims elsewhere. *See BOKF v. CEC*, Mem. of Law (Dkt. # 132); *UMB v. CEC*, Mem. of Law (Dkt. # 135). More broadly, three of MeehanCombs' common law claims (counts II, IV, and VIII) and two of Danner's common law claims (counts III and V) are, in plaintiffs' view, based in part on CEC's alleged role in the Disputed Transactions, in which assets are alleged to have been wrongfully sold away from CEOC. The Court should dismiss the portions of these common law claims premised on the Disputed Transactions, because there is and could be no evidence that any involvement by CEC in the Disputed Transactions was in breach of the indenture, or breached the implied covenant.

      2.    Seven of the *MeehanCombs* plaintiffs' claims are based in part on allegations about so-called "affiliate voting" (counts I-IV and VI-VIII), as are two of Danner's claims (counts I and V). The Court should dismiss the portions of these claims which are premised upon affiliate voting in the August 2014 transaction. There is and could be no evidence that CEC or CEOC owned or controlled the counterparties' notes.

I. **The Court Should Dismiss the Good Faith Claims, as Well as the Portions of any Common Law Claims That are Based Upon the Disputed Transactions**

The Court should dismiss the good faith claims in their entirety. To the extent they concern the termination of the parent guarantee (including through the August 2014 transaction), they duplicate the breach of contract claims. The good faith claims concern two contracts: the agreement CEC and CEOC signed with the counterparties to the August 2014 transaction, and the indenture and the amendment thereto. *See MeehanCombs*, Am. Cpl. ¶¶ 177-78; *Danner*, Am. Cpl. ¶¶ 103-04. These are also the subjects of the breach of contract claims, as the following table demonstrates for the *MeehanCombs* amended complaint

| *This allegation is found in the good faith claim* | *The allegation is found in the contract claims too* |
|---|---|
| The August 2014 transaction was not made available to "numerous individual investor noteholders who possess no practical means of engaging in separate discussions or transactions on a one-off basis" (¶¶ 177(a), 178(a)). | ¶ 147 (see also ¶ 146) |
| The amendment of the indenture in which the parent guarantee was removed resulted from buying votes and "empty voting" (¶ 178(a)-(b)). | ¶¶ 146-47 |
| The August 2014 transaction was an effort "to avoid the "Covenants Against Fundamental Changes" in the indenture (¶ 177(c)). | ¶ 149 |
| The August 2014 transaction thwarted the requirement in the indenture that shares be selected for redemption using a "fair and appropriate" process (¶ 177(d)). | ¶¶ 154-55 |
| The August 2014 transaction thwarted the "mandate that no one or more bondholder shall affect, disturb or prejudice the rights of any other bondholder, nor obtain a priority or preference over any other bondholder" (¶ 177(e)) | ¶ 169 |
| In the August 2014 transaction, Caesars improperly directed the voting, even though it would have been unable to vote itself under the indenture (¶ 178(c)) | ¶¶ 167-68 |

The same is true of *Danner*. *E.g., Danner*, Am. Cpl. ¶ 87 (breach claim concerning indenture section 508 of indenture – redundant of ¶ 104 of good faith claim); ¶¶ 94-95 (breach claim concerning redemption – redundant of ¶ 103(d) of good faith claim). On this basis, the Court should dismiss the redundant good faith claims. *See, e.g., Russell Publ'g Group, Ltd. v. Brown Printing Co.*, 2014 WL 1329144, at *5 (S.D.N.Y. April 3, 2014).

Alternatively, to the extent the good faith claims concern the Disputed Transactions and the sale of CEOC assets therein, the Court should dismiss the good faith claims, because they are based on a theory which impermissibly contradicts the indenture, particularly section 801 of the indenture. Plaintiffs are suing over the parent guarantee of their <u>unsecured</u> notes, and the indenture gives plaintiffs little say in the sale of CEOC assets. Section 801 bars only a sale of "all or substantially all of [CEOC's] assets." Plaintiffs have not shown that this description applies to any Disputed Transaction. Moreover, any

prohibition in section 801 is against CEOC, not CEC. And plaintiffs do not have and could not have any proof that any role CEC played in the Disputed Transactions ran afoul of section 801. The good faith claims seek to undermine the carefully bargained-for package of rights in the indenture. *See, e.g., Granite Partners, L.P. v. Bear Stearns & Co.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998) (implied covenant cannot create independent obligations).

More broadly, the Court should dismiss the portions of the common law claims that are premised on the Disputed Transactions, which are irrelevant to whether CEC breached the parent guarantee. Otherwise, the May 9 trial may be at risk of being overrun by efforts to present evidence about the Disputed Transactions. There is and could be no proof that any role of CEC in the Disputed Transactions breached section 801 of the indenture (which is not even addressed to CEC) or breached the implied covenant in the indenture.

II.      The Court Should Dismiss the Parts of any Claims That are Based on Affiliate Voting

The Court initially ruled that the *MeehanCombs* plaintiffs failed to state an affiliate voting claim under TIA section 316(a). *See MeehanCombs v. CEC*, 80 F. Supp. 3d 507, 516-17 (S.D.N.Y. 2015). They had alleged that CEC and CEOC "controlled" the counterparties to the transaction under this statute, so the counterparties' votes to amend the indenture should not have been counted toward the requisite majority for amendment. (This August 2014 amendment removed the parent guarantee from the indenture.) The Court gave "MeehanCombs the opportunity to amend its complaint to include allegations relating to beneficial ownership and control" of the counterparties' notes. *Id.* at n.56 (citation omitted). But in amending, the *MeehanCombs* plaintiffs simply recycled the unavailing assertions they had made in their brief opposing CEC's motion to dismiss the TIA section 316(a) claim.

The Court should, in both cases, dismiss the portions of the claims which are premised on affiliate voting, because plaintiffs have, and could have, no proof that any note which was voted in favor of amending the indenture so as to remove the parent guarantee was owned by someone "directly or indirectly controlling or controlled by or under direct or indirect common control with" CEC or CEOC. *See* 15 U.S.C. 77ppp(a). "[T]here is no genuine issue as to any material fact" about affiliate voting. *See* Fed. R. Civ. P. 56(a).

The depositions of David Sambur and Andrew Dietderich (who negotiated the August 2014 transaction for CEC and the counterparties, respectively) showed that CEC and CEOC were at arm's length from the counterparties, and the transaction resulted from hard negotiation. And the deal documents reflect that the counterparties gave effective consents to amending the indenture which governed the notes <u>before</u> they tendered the notes. This was in keeping with the structure of the August 2014 transaction, which was typical in this regard. Accordingly, the Court should dismiss the parts of plaintiffs' claims premised on the counterparties being "affiliates" of CEC or CEOC when they voted to amend the indenture.

Respectfully,

Philippe Adler