

**Grant & Eisenhofer P.A.**

485 Lexington Avenue   New York, NY 10017   Tel: 646-722-8500   Fax: 646-722-8501

123 Justison Street
Wilmington, DE 19801
Tel: 302-622-7000
Fax: 302-622-7100

1747 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

30 N. LaSalle Street
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001

Gordon Z. Novod
Director
Tel: 646-722-8523
gnovod@gelaw.com

March 14, 2016

**BY ECF AND HAND DELIVERY**

The Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007-1312

      Re:  *Frederick Barton Danner v. Caesars Entertainment Corp., et. al,*
            Case No. 1:14-cv-7973-SAS

Dear Judge Scheindlin:

      We represent the Plaintiff and the proposed class in the above-referenced action, and write in opposition to a request (the "Request") [Danner ECF 103; MeehanCombs ECF 110] by defendant Caesars Entertainment Corporation ("CEC") for a pre-motion conference seeking permission to file a motion for summary judgment.

      CEC's proposed motion lacks merit and, at this late date, threatens to disrupt the trial preparation process. CEC has been apprised of Plaintiff's claims since October 2014, but has waited to request this pre-motion conference until less than two months before trial. CEC could have moved for summary judgment at any time since fact discovery closed on October 13, 2015 (or at the very least could have made its proposed motion when it made a similar motion in the BOKF and UMB actions).[1] Plaintiff objects to CEC's effort to initiate a new round of summary judgment briefing at this late hour, and respectfully requests that the Court deny CEC permission to move for summary judgment. In any event, Plaintiff is prepared to narrow the claims to be tried, as described herein.

### I.    The "Disputed Transactions"

      At the outset, Plaintiff notes that the Request employs, but fails to define, the term "Disputed Transactions." Whatever that term specifically denotes, the Request also omits to advise the Court that on March 8, 2016, Plaintiff informed CEC that Plaintiff intends to address at trial only those transactions referenced by Plaintiff's Amended Complaint and/or the Expert Report of Professor Israel Shaked. These transactions are the "LBO," the "CERP Transaction," the "Growth Transaction," the "Four Properties Transaction," the "Shared Services Joint Venture," the "B-7 Refinancing," the Performance Incentive Plan, the "Senior Unsecured Notes

---

[1] While expert discovery closed more recently, the issues raised by the Request were not the subject of expert discovery.

The Honorable Shira A. Scheindlin
March 14, 2016
Page 2

Transaction" and the "Showboat Closure." While certain of these transactions, such as the "B-7 Refinancing," the Performance Incentive Plan, the "Senior Unsecured Notes Transaction" are central to Plaintiff's case as a whole, the remaining transactions are relevant with respect to Plaintiff's TIA claim (Count II) and whether CEC was engaged in an out-of-court restructuring. Thus, Plaintiff does not anticipate offing any evidence concerning the remaining transactions as it pertains to Plaintiff's good faith and fair dealing claims (Count V) (the "Good Faith Claims"), discussed further below.

## II.    Plaintiff's Good Faith Claims Are Not Duplicative Of The Contract Claims

New York law clearly allows a plaintiff to simultaneously pursue claims for breach of contract and breach of the covenant of good faith and fair dealing unless (i) "the allegations do not go beyond the statement of a mere contract breach" and (ii) the allegations "rely[] on the same alleged acts [of the contract breach]." *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp.*, 610 F.3d 44, 52 (2d Cir. 2010). Because this is not true of all of Plaintiff's Good Faith Claims, they may be asserted alongside his contractual claims.

CEC asserts that the Good Faith Claims should be dismissed to the extent they concern the parent guarantee (as being redundant of the breach of contract claims) or the "Disputed Transactions" (as being inconsistent with the indenture). CEC specifically argues that the Good Faith Claims are duplicative of Plaintiff's contract claims under sections 508 and 1103 of the indenture. Plaintiff acknowledges that certain allegations support both the Good Faith Claims and the contractual claims asserted in Counts III and IV. CEC also argues that to the extent the Good Faith Claims concerns the "Disputed Transactions and the sale of CEOC assets therein," the Count should be dismissed. Plaintiff does not intend to present evidence at the May 9 trial with respect to this aspect of Plaintiff's Count V, as contained in paragraph 103(c).

Yet, certain aspects of the Good Faith Claims must be tried, including whether CEC's May 2014 sale of 5% of CEOC's common equity and CEC's transfer of 6% of CEOC common equity were part of a scheme to deprive the 2016 Noteholders of the protections of the TIA, and the covenant of good faith and fair dealing. These transactions are not expressly part of Plaintiff's contract claims and stem from CEC's conduct to frustrate fair and good faith performance of its obligations under the indenture.

Furthermore, any motion for summary judgment on Plaintiff's Good Faith Claims as it relates to the 5% stock sale, for example, will be unavailing. The undisputed facts are that the purchasers in this transaction were three managed funds, two of which were existing CEC shareholders who stood to benefit from the release of CEC's guarantee and the other was a significant CEOC creditor who sold its CEOC notes back to CEOC on the same day as the stock sale. These new shareholders purchased their equity even though the shares were not publicly traded, had no readily determined market value, and did not have a positive share value using traditional valuation methods. Moreover, CEC retained the power to put in the directorship role any person, without prior notice to the minority stockholders, without a meeting or a vote. CEC was only required to provide notice that they had done so within 60 days *after* the election (by written consent) had taken place. 8 *Del. C.* § 228(e). Lastly, because CEOC's written consent

The Honorable Shira A. Scheindlin
March 14, 2016
Page 3

provisions—which depend on CEC having a majority of voting shares—demonstrate the fact that CEC had substantially all of the *voting power*, with minority shareholders in a position to be completely blocked from participating in any board elections. Because the power to vote is typically a fundamental right of a stockholder, *see Giuricich v. Emtrol Corp.*, 449 A.2d 232, 239 (Del. 1982), without it, the minority stockholders' interests were quite limited. In short, this stock sale did not bear the indicia of a transaction where the acquisition of equity ownership of CEOC was the true goal of the transaction.

Plaintiff's Good Faith Claims arising from these stock transfers, moreover, are not redundant of any breach of contract claims. CEC has asserted as a defense that these stock transfers caused the release of its Guarantee under the indenture. Plaintiff is challenging this defense, and is alleging, moreover, that each of these stock transfers occurred during or as part of an out-of-court restructuring in May 2014. New York law does not bar a good faith claims where they are not redundant of causes of action plead for breach of contract. *Russell Publ'g Group, Ltd., v. Brown Printing Co.*, No. 13 Civ. 5193, 2014 WL 1329144 (S.D.N.Y. April 3, 2014) (Scheindlin, J.). Moreover, the Good Faith Claims (as limited as set forth herein) do not "imply a covenant inconsistent with the terms expressly set forth in the contract." *Harford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989) (Sweet, J.) (citation omitted). Lastly, "New York Courts have recognized a separate cause of action for breach of the covenant of good faith and fair dealing ... in cases involving efforts by one party to a contract to subvert the contract itself." *Butvin v. DoubleClick, Inc.*, No. 99 Civ. 4727, 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001) (Keenan, J.) (citing *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 697 N.Y. Supp. 2d 128, 130 (App. Div. 1999); *Sauer v. Xerox Corp.*, 95 F. Supp. 125, 132 (W.D.N.Y.2000) ("[S]uch a claim may be brought . . . only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.")). Here, while transferring CEOC equity may not have been expressly breached the indenture – and may have caused a TIA violation – it deprived the parties of the benefit of their bargain under the indenture.

### III.    The Affiliate Voting Issue Is Appropriate For Trial

With respect to the affiliate voting issue, the Request is primarily directed to the *MeehanCombs* plaintiffs, who assert a TIA claim arising from this issue. Plaintiff's Amended Complaint does, however, allege that "Caesars directed the voting of the Preferred Noteholders' 2016 Notes," Am. Compl. ¶ 104(c), and seeks a declaratory judgment based in part on that allegation. *Id.*, ¶ 75(d). Under the terms of the Note Purchase and Support Agreement, entered into as of August 12, 2014, the Preferred Noteholders were contractually bound to consent to remove CEC's guarantee from the 2016 Notes Indenture, as a condition of their agreement with CEC and CEOC, effective August 22, 2014. CEC's contention that the Preferred Noteholders gave "effective consents" to amend the indenture before tendering their notes raises factual questions that should be resolved at trial.

The Honorable Shira A. Scheindlin
March 14, 2016
Page 4

 

                                Respectfully submitted,

                                */s/ Gordon Z. Novod*

                                Gordon Z. Novod

cc: All Counsel of Record (via ECF)